# EXHIBIT 26




Filing Attorney: Mrs. Shamora Scott-Springer
Psalters Business Hub
Salters Main Road
St. George, BB19041

No.: (246) 425-0995
Email: shamora@virtuslegal.com

Advocate Attorney: Mr. Alrick Scott, KC
Psalters Business Hub
Salters Main Road
St. George,
Barbados

No.: (246) 425-0995
Email: alrick@virtuslegal.com



# SUPREME COURT OF BARBADOS
## IN THE HIGH COURT OF JUSTICE

CLAIM NO. | CV0083/ 2023

BETWEEN:

**LANDBRIDGE PORT SERVICES (HONG KONG) LIMITED**      **CLAIMANT**

AND

**LANDBRIDGE HOLDINGS INC.**                    **FIRST DEFENDANT**

**TINGYUN HAN**                                 **SECOND DEFENDANT**

**SINOLAM CONSULTING & TRADING HOLDINGS PTE**           **THIRD**
**DEFENDANT**

**LIANG ZHANG**                                 **FOURTH DEFENDANT**

**GORGEOUS COLON HOLDINGS CO. LIMITED**         **FIFTH DEFENDANT**

---

### SECOND DEFENDANT'S AFFIDAVIT IN ANSWER

---

I, **TINGYUN HAN**, of Apartment 1207, PH Bayfront, Panama City, Panama, **MAKE OATH AND SAY** as follows:

## INTRODUCTION

1.  I am a nominal director of the First Defendant, Landbridge Holdings Inc, "**LHI**", and held that office for one year and 5 months, from August 6th, 2020 to March 2022, when the First Defendant was dissolved. I am also the Second Defendant in this action. I make this affidavit in my personal capacity, and not on behalf of the LHI. I was, at all material times, a nominal director for the sole shareholder of LHI.

2.  I was, at all material times, the personal assistant/Spanish translator to Mr Zhang. I helped arrange his daily agenda and meetings with different executives of PCCP. Mr. Zhang cannot speak Spanish, so as his personal assistant, I mainly translated documents from Spanish to English or Chinese for Mr Zhang and communicated with other employees on his behalf. I was a low-level worker, and persons in such positions in PRC companies are not included in high-level negotiations. I was not involved in the high-level negotiations between Chairman Gao and Chairman Ye and others, including Mr Zhang. Mr Zhang and Chairman Gao had a very close relationship and Mr Gao trusted Mr Zhang who managed, directed and operated Chairman Gao's companies in the Panama Project.

3.  I make this affidavit in answer to the claim filed herein by the Claimant, as set out in the Further Amended Claim Form and the Affidavits of Chairman Ye filed on February 1st, 2023, February 14th, 2023 and September 19th, 2023 and referred to as "**Ye #1**", "**Ye #2**" and "**Ye #3**" respectively. On August 1st, 2023, I was served with several documents, one of which included the First Affidavit of the Fourth Defendant (Mr Zhang) filed on the 27thApril 2023. I propose adopting the definitions used in Ye #1, Ye #2, Ye #3 and the Affidavit of Mr Zhang filed on behalf of the LHI, for ease of reference. To avoid repeatedly attaching the same documents to multiple affidavits and adding to the already voluminous documentation in the action, I shall refer to documents already exhibited to affidavits filed herein without exhibiting them to this affidavit.

4.  Save where otherwise indicated, the facts and matters deposed to in this Affidavit are within my personal knowledge. Insofar as the matters contained herein are within my personal knowledge, they are true. Where the facts and matters are not

within my personal knowledge, they are based on information given to me or derived from statements or documents that I have read and believe them to be true to the best of my knowledge, information and belief.

## RESPONSE TO YE 1

5.   I make no admission as to paragraphs 1 and 2 of Ye #1.

6.   I do not have personal knowledge of the events which took place in 2016. When the transaction occurred in January 2016, I was working in other jobs in China and had not yet joined PCCP. Based on documents I have seen, paragraphs 3 and 4 of Ye 1 are admitted, in so far as these paragraphs state that LHI was the 100% shareholder of four (4) companies incorporated in Panama – Panama Colon Container Port, Inc ("**PCCP**"), United Crown Construction, Inc ("**UCC**"), Isla Margarita Resources, S.A. ("**IMR**") and Central America Shopping Mall, Inc. ("**CASM**") together the "**Panama Project Companies**". I agree that Chairman Gao was the sole shareholder and ultimate beneficial owner of all (1000) shares of LHI in 2016, based on documentation.

7.   It was always my understanding, based on information provided by Mr Zhang, that Chairman Gao remained the sole beneficial owner of the shares in LHI, notwithstanding that shares were issued to the Claimant.

8.   I am unable to admit or deny paragraphs 5 and 6 of Ye 1. I was not involved in any of the discussions between Chairman Gao and Chairman Ye recited in those paragraphs.

9.   I am unable to admit or deny any of the alleged discussions between Chairman Gao and Chairman Ye or their expectations as alleged in paragraph 7 of Ye 1. Neither can I say who had better credit. However, I knew that both Chairman Gao and Chairman Ye were wealthy businessmen. The Landbridge/Creation Agreement was entered into as a fact but is denied, based on what Mr Zhang had told me at that time before this action, that the Claimant had a beneficial interest in the shares in LHI. I was not a party to the discussions leading to the Landbridge/Creation Agreement discussion nor the making of that agreement. At the time the shares were issued to Chairman Gao and Chairman Ye, my only involvement in LHI was as personal secretary/assistant to Mr Zhang, who managed the Panama Project companies for Chairman Gao. However, Mr Zhang had told

me that shares in LHI were being issued to the Claimant for the purpose of raising loan money for the Panama Project from banks in the PRC. When I assisted Mr. Zhang in obtaining the documents for the equity transfer from China, I was convinced that my colleagues in China also believed that these share transfers were carried out to obtain financing from the China Development Bank.

10.   The only role I played with respect to the 2017 issuance of shares in LHI to the Claimant was, on instructions from Mr Zhang, to contact LHI's corporate services provider in Barbados, Delaney Corporate Services Inc., as well as some administrative work such as contacting domestic colleagues. I played no corporate secretarial role in either PCCP or LHI in 2017, and I performed tasks that were delegated to me.

11.   Paragraph 8 of Ye 1 is true in so far as it recites what the Landbridge/Creaton Agreement states. However, neither the Claimant nor Chairman Ye, was actively involved in LHI, either as a director or shareholder, at any time. The operation and management of PCCP continued unaffected by the Landbridge/Creation Agreement. Mr Zhang continued to manage the Panama Project without the support or interference of the Claimant or Chairman Ye. I know this because since I joined the company in June 2016, I have been assisting Mr. Zhang in communicating and translating with all PCCP executives. In addition to several engineers stationed by Landbridge Group to assist with some project management on-site in Colon (another province of Panama), Panama City's all personnel in the office report directly to Mr. Zhang, and Landbridge personnel have never participated except only Mr. Yau Lok Stephen Chung ("Stephen") was temporary working in Panama City office less than one year (from end of 2018 to end of 2019) as a temporary financial advisor during the China Bank's financing process, Stephen left after the failure of the bank finance. Chairman Ye and Li Yejun were only "nominal" directors on the board of directors.

12.   The cancellation and issuance of shares referred to in paragraph 9 of Ye 1, is admitted. However, I do not know of the underlying discussions and agreement that led to the cancellation of Share Certificate No. 1 and the issuance of Share Certificates No. 2 and No. 3. I do not know whether the acts were pursuant to the alleged 50/50 joint venture between the Claimant and Creaton or the Landbridge/Creaton Agreement. However, I was told by Mr Zhang that it was done for the purpose of the Claimant and Chairman Ye raising loan money from banks

in the PRC, and was not a real transfer of shares to the Claimant. I believe that to be true because neither the Claimant nor Chairman Ye had any corporate or other involvement in LHI. The operation and management of the PCCP project company did not change after the share transfer in 2017. All senior executives (including the financial director Stephen who came to Panama in 2019) still reported directly to Mr. Zhang. All matters were the final decision of Mr. Zhang, and Mr. Zhang made the final decisions on major matters. Decisions were made after reporting directly to Chairman Gao. All employees used Chairman Gao's company's email address, and all information and key documents such as the original PCCP's shareholder books were controlled by Mr. Zhang. I know this because Mr. Zhang often arranged for me to convey his instructions to other PCCP executives.

13. The corporate records reflect the matters stated in paragraph 10 on paper but not in practice or reality. Mr Zhang continued to manage the Panama Project and the companies controlled by LHI without the Claimant's involvement, direction or interference with Chairman Gao, notwithstanding, on the paper, the changes in shareholding. Notwithstanding the changes to the corporate records, neither the Claimant nor Chairman Ye had any corporate dealings with, or involvement in LHI, either as a shareholder or director.

14. Paragraph 11 of Ye 1 is admitted. I was directed by Mr Zhang to contact Delaney Corporate Services in Barbados for them to have Chairman Ye appointed as a director, which I did. I was told by the First Defendant that it was being done as part of the attempt for Chairman Ye to raise loans from banks in the PRC for the Panama Project and to satisfy any due diligence enquiries which the PRC banks may wish to carryout. Mr. Zhang told me that generally speaking, directors need to be changed on the day of the share transfer in September 2017, but because this share transfer was only to deal with the financing bank, there was no rush to handle it. After 8 months in June 2018, Mr. Zhang told me that in order to deal with the China Development Bank, we need to add several directors. And at the same time, we need to adjust the shareholders of our LHI according to the bank's requirements, from Creaton Company to Hong Kong's Gorgeous Colon. I believe that to be so because, thereafter, Chairman Ye did not get involved in the operations or management or in directing LHI. And in fact, he has not provided any evidence which shows his involvement in LHI.

15. As to paragraph 12, I can neither admit nor deny that several news outlets reported that Notarc had acquired PCCP. The Claimant could not reasonably have expected to be informed of any transaction involving LHI when it was not then a shareholder in LHI, and even when it was a shareholder on paper, it was not involved in LHI either as a shareholder or director. In the nearly seven years I worked at PCCP, neither I nor any company executive ever had to report anything to the Claimant, Chairman Ye or the Landbridge Group. Moreover, all the Claimant's personnel stationed in Panama left Panama after the CDB financing failed.

16. Further, the attempt to sell the Panama Project was not a secret. Mr Zhang was responsible for the promotion. Since the failure of China Development Bank financing at the end of 2019, Mr. Zhang had been actively trying to sell the Panama Project, not only in Panama, but also in the United States and Hong Kong. It is surprising that neither the Claimant nor Chairman Ye knew of the attempts to sell the Panama Project.

17. It is denied that the Claimant's shares were not transferred back to Chairman Gao. The Claimant's shares in the First Defendant were transferred in two portions. First, 10 shares were transferred from the Claimant to Gorgeous Colon Holdings Co Limited on January 7th, 2020 and the remaining 500 shares were transferred back to Sinolam on July 28th, 2020. Since July 2020, the Claimant has not been a registered shareholder in LHI. Chairman Gao had arranged for colleagues in the PRC to deliver the executed share transfer form with both Chairman Ye's and Chairman Gao's signature to me, which I received with Chairman Ye's signature in Panama. On the instructions of Mr Zhang, I arranged for the share transfer form, transferring the 500 shares to be notarized. I had no reason to suspect that the share transfer form was forged because the share transfer documents in 2017 and the share transfer documents in 2020 are the same. They only have the signatures of Chairman Ye and Chairman Gao, and they were sent to me by people in the PRC. The only difference is that Mr. Zhang told me that because he was in Hong Kong at this time, he could not sign as a witness as in the case of the 2017 transfer document. Mr Zhang asked me to go and have it notarized in Panama because Mr. Zhang told me that Chairman Gao no longer trusted Chairman Ye. Notarization was considered necessary to avoid any dispute in the future, and as stated, considered important because trust between Chairman Gao and Chairman Ye had broken down, but certainly Chairman Gao no longer trusted Chairman Ye.



It was notarised based on a copy of the passport and signature of Chairman Ye, which was used to authenticate the signature of Chairman Ye. While I did not see Chairman Ye sign the share transfer form, I believe it is his signature, given how it was received, and also its likeness to his previous signatures. I had various documents notarized in that way during the time I worked in Panama for Mr Zhang. The share transfer form transferring 500 shares in LHI to Sinolam is not fake, nor is it a forgery.

18. Chairman Ye signed the share transfer forms to effect the transfer of shares to Chairman Gao's companies in two portions as indicated above. Mr Zhang had told me that the shares were being transferred back to Chairman Gao because Chairman Ye was unable to raise the funding from banks in the PRC.

19. While I was not a party to the discussion leading up to the Trust Declaration, I was told by Mr Zhang in 2020 that the shares were being transferred back to Chairman Gao because of the Claimant's and Chairman Ye's inability to obtain the financing from banks in PRC and that Chairman Ye was transferring the shares back to Chairman Ye because of an agreement between the two of them.

20. Finally, concerning paragraph 12 of Ye 1, the signature of the Claimant or that of Chairman Ye was not required, as Chairman Ye was not then a director. Both Chairman Ye and Li Yejun had by letters dated August 6th, 2020, resigned as directors. Both letters were notarised, based on copies of their passports and signatures, which authenticated their signatures on the letters received from the PRC. On the instructions of Mr Zhang, I had them notarised.

21. As to paragraph 13 of Ye 1, I cannot admit or deny that Chairman Ye caused searches to be made at CAIPO. The documents referred to at paragraph 13, would properly have been on LHI's corporate file at CAIPO. Paragraph 13 of Ye 1 confirms that Chairman Ye had no corporate dealings with, or involvement in LHI, whether as shareholder or director. The fact that Chairman Ye apparently had none of the documents listed in paragraph 13 of Cheng Ye 1, shows that he had no knowledge of LHI and took no interest in the company because he was made, as I was told by Mr Zhang, a shareholder on paper only for the purpose of obtaining a loan from an institution in the PRC. All documents registered by LHI with CAIPO were kept by me to assist Mr. Zhang in the Panama office of PCCP and our secretarial company office in Barbados until I left my job in March 2022. Chairman

Ye claimed that he acquired 51% of the company's shares in 2017, but he never asked me or our secretarial company for any LHI documents, and never made any inquiries about LHI's CAIPO files from 2017 to 2022. Regarding the information about LHI, this is obviously not something that a 51% shareholder who spent US$125 million would do. After Chairman Ye signed the document to purportedly purchase 51% of LHI's shares in 2017, Chairman Ye handed the document to Chairman Gao. Later, I sent the document to our Barbados lawyer. Chairman Ye seemed to have only signed the document for the share transfer in 2017. But he doesn't care whether the document he signed was handed over to our Barbados lawyer, whether 51% of the shares are registered in the shareholder register, or whether he was registered as a director after acquiring, on paper, 51% in 2017, because he never made inquiries on CAIPO, and have not hired any lawyers, nor have arranged anyone from Landbridge Group to supervise me to proceed to register changes in share register or directors' register. By the same token, he doesn't care whether the 51% transfer documents and director resignation documents signed by him are registered, because he never sends anyone to CAPIO to inquire. As mentioned in paragraph 13 of Ye1, he only asked a lawyer to check the relevant situation of LHI in CAPIO for the first time in 2023 after the litigation started. I have no reason to believe that he is the real shareholder. I deeply believe the facts that Mr. Zhang told me: Chairman Ye only served as the trustee of Chairman Gao.

22.      As to paragraph 14, it is true that I became the sole director of LHI, as evidenced by a Notice of Change of Directors dated August 17th, 2020. In July 2020, Mr Zhang asked me if I would accept the appointment as the sole director of LHI. Mr Zhang had informed me that Chairman Ye and Yejun Li had resigned as a director because of the agreement with Chairman Gao, which was for the purpose of raising loans from banks in the PRC, which did not materialise. Mr Zhang told me that because Chairman Ye was unable to secure the loans for the Panama Project, the Claimant was exiting LHI as a shareholder on paper and Chairman Ye and Yejun Li were resigning.

23.      I accepted Mr Zhang's invitation to be appointed as the sole director of LHI. I was appointed as the sole director of LHI on August 6th, 2020 by a resolution passed by the sole shareholder of the First Defendant at the time. A true copy of the said shareholder resolution is exhibited to the First Affidavit of Mr Zhang as Exhibit "ZL-



4". All of the LHI directors voluntarily resigned. The existing directors then were Chairman Ye, Li Yejun, Chairman Gao and Mr Zhang. It was Chairman Gao who had arranged for the resignations signed by Chairman Ye and Li Yejun to be sent to me. After Chairman Ye's and Li Yejun's resignations were notarised, I arranged with Delaney Corporate Services Inc to register the changes on the board of LHI. I was made a director and legal representative in both LHI and PCCP/UCC/CASM because Mr Zhang was going to be out of Panama and he wanted me to remain there to replace Zhang's previous position, as he had trust in me. However, he asked me to report everything to him in advance, which I did.

24. At the time of my appointment as a director, I had no equity in LHI and I understood that I was being appointed as nominee of the sole shareholder, to do as directed by the sole shareholder.

25. I agree that the documents mentioned in paragraph 14 were filed with CAIPO to dissolve LHI. The dissolution of LHI was not an attempt to evade responsibility, as the Claimant alleges. LHI was dissolved because it had no assets and there was no commercial purpose for it to serve after the project was sold to Notarc. Continuing LHI would have been an unnecessary expense. I did not make the decision to dissolve the company but was acting on the instruction of Mr Zhang, as I was no more than a nominal director.

26. As it relates to paragraph 14, I worked as secretary to Mr Zhang. During my career, I have helped him to dissolve companies from time to time. We set up many SPVs for different projects. Once the project is sold or is no longer profitable, they were dissolved, otherwise, it would generate costs annually. I helped Mr Zhang dissolve Gorgeous Colon, the company that held shares in LHI after Gorgeous Colon transferred shares to Sinolam Consulting & Trading Holdings PTE Ltd. After Chairman Gao passed away, Mr Zhang and I started to dissolve several other SPVs.

27. Paragraph 15 is not true. Chairman Ye signed share transfer forms for the transfer of shares which were held by the Claimant in LHI and knew what he was doing. Chairman Ye also resigned, voluntarily as a director. I believe that Chairman Ye is taking advantage of the death of Chairman Gao to make the false claim that he did not know that the Claimant did not own 51% of the shares in LHI and that he was not a director.

28.    Paragraph 16 of Ye 1 is not true. Chairman Ye states that he did not receive any compensation for his shares. I was not involved in any discussion between Chairman Ye and Chairman Gao. However, Mr Zhang has always told me that the transactions involving the Claimant and Chairman Ye were paper transactions for the purpose of raising money in the PRC for the Panama Project. Chairman Ye resigned voluntarily, contrary to what he states in paragraph 16, based on his letter of resignation which was sent to me. There was no need to inform the Claimant or Chairman Ye of the intention to dissolve LHI, since he was not then a director or a shareholder on paper.

29.    I am unable to admit or deny paragraphs 18, 19 and 20 of Ye 1, concerning what the Claimant's attorneys have done or may have done.

30.    I worked as a personal secretary/assistant to Mr Zhang at PCCP in Panama until the end of March 2022. Since the cancellation of PCCP's concession by the Government of Panama, the PCCP project was no longer viable. I was aware that Mr Zhang was negotiating with Notarc, however, I was not involved in any substantial negotiations. I do not have any knowledge of the details of the transaction documents of the Notarc deal. My involvement was limited to signing documents after the negotiations were finalized, as the nominal director of the sole shareholder. After Mr Zhang completed the negotiations with Notarc, he instructed me to sign the transaction document as director in both LHI and PCCP.

## DETENTION & TORTURE

31.    After I resigned from the First Defendant in March 2022, I restarted a career in my personal trading business. Also, I started an EMBA study programme with Peking University in Beijing China in September 2022.

32.    In February 2023, Mr. Zhang told me that the Claimant's lawyer restored LHI Company and suddenly launched a lawsuit. Because I am still the sole director of LHI, Mr. Zhang hopes that I can help submit the defence. At the request of Mr. Zhang, I filed an affidavit in this action on behalf of the First Defendant on February 9th, 2023. Mr. Zhang specifically reminded me that I needed to pay attention to my safety in China because Chairman Ye's close relationship with senior leaders of the PRC government may threaten my personal safety. Therefore, I did not leave my residential address in China in my first testimony, but a mailing address in

Panama (although I did not actually live there, I could get letters from the receptionist on the first floor). I knew I had to be cautious, but I did not think that I would be a direct target of Chairman Ye in the way it turned out, so I decided to stay in China to study for an EMBA. But I never expected that my remaining in the PRC would lead to me being illegally interrogated, investigated, and detained by the police from Chairman Ye's hometown in the PRC, and being tortured during my detention.

33.    I was on my way back to Xi'an, my hometown, on March 14th, 2023. When I arrived at the Xi'an Xianyang International Airport around 5 p.m., the Rizhao police arrested me inside the airport.  It was strange that it wasn't the police from Xi'an who came to arrest me. Rizhao, Shandong is Chairman Ye's home province. I was not allowed to call anyone, nor was I told why I was arrested. The police told me that the Claimant and Chairman Ye filed a case with the Public Security Bureau, saying that I personally violated the PRC's criminal law. Because they were not satisfied with my answer, the police drove me for 12 hours and over 1,000 kilometres from my hometown of Xi'an to Ye Cheng's hometown of Rizhao City to continue the interrogation. The interrogation continued and I could hardly sleep during it. By 7:30 a.m. on March 16th, 2023, I started vomiting violently and could not breathe and was rushed to the hospital for emergency treatment.

34.    Police only asked about a $300,000 loan from PCCP, and another company called Triforce on the first day, but the bulk of the questioning was about LHI's shares. Later, when I left the police station, my lawyer told me that when the police opened the case, they had opened a case against me for the crime of embezzlement of Triforce loans from PCCP. The loan was negotiated and signed directly by Mr. Zhang with Triforce, PCCP's stone supplier. Later, the $300,000 loan was repaid. My lawyer told me that not only did the Rizhao police have no jurisdiction over the normal business dealings between the two Panamanian companies, but the above-mentioned loan obviously did not meet the standards for filing an embezzlement case under PRC law. The lawyer told me that this was a typical criminal attempt to interfere with a civil proceeding in Barbados. I didn't know a lot of information from the police interrogation, but I couldn't leave the police station without the police being satisfied. The police forced me to sign many interrogation transcripts during the interrogation.

35.    In paragraph 46 of Y3, the plaintiff lied and said that "Chinese police conduct criminal investigations independently" and "since the information obtained by the police during the investigation constitutes confidential information under the laws of the People's Republic of China, Landbridge and I have very limited knowledge of the details of the investigation." Chairman Ye and Landbridge Group not only initiated this illegal arrest and persecution, but also substantially participated in the criminal investigation. On March 19th, 2023 the police officers arranged for a team from the Claimant, which included Mr Fu Yingjun, Mr. Tian Lin and Stephen, to meet with me face-to-face at the police station asking for details about share transfer. Mr Fu Yingjun asked me directly to help the Claimant get the shares in LHI back to the Claimant for Chairman Ye. Because I refused to help, Stephen directly insulted me with some offensive words. Mr. Fu Yingjun threatened me by telling me that if I didn't cooperate then I would be forced to stay in the police station. On March 27th, 2023, I saw with my own eyes Mr. Tian Lin who is the Vice President of Landbridge Group and the police chief smoking and joking in the lobby of the police station. When I was able to leave the police station on bail pending trial with the help of my lawyer, Mr. Fu Yingjun was also at the police station trying to stop me.

36.    I believe the police also shared my emails and other information with the Claimant and Chairman Ye. I have a lot of emails exchanged between all the Lex Caribbean lawyers and me. I know that the police shared my email with Landbridge Group because the lawyers of Landbridge Group applied to serve litigation materials to my zizhuyunwuyu@gmail.com in August, but only the police had knowledge of the existence of this email address and had access to it. I was detained from March 14th to 27th March 2023 by police officers stationed in Lanshan, Rizhao, Shandong. During this time, I was forced to surrender my mobile phone, my laptop and access to my emails. In doing so, my interrogators gained access to confidential information relevant to this litigation, some of which are now exhibited before this Court. I never disclosed my email to Landbridge, apparently they got it from the police.

37.    The threat from the police was ever-present. After Mr. Zhang submitted his testimony on April 27th. On July 26th, 2023, I was called into the police station again for interrogation. They asked me again about some facts about the shares and the loan, also they inquired about the whereabouts of Mr Zhang and I refused to

answer them. Because they were dissatisfied with my uncooperative attitude, the police clearly told me that they would not withdraw my "embezzlement" case and would not lift my enforced ban on leaving the country. In other words, as long as the Barbados lawsuit was ongoing, I would not be allowed to freely leave Xi'an City without the permits from Rizhao Police Station, Lanshan Branch.

38. I also believe the threat from Landbridge will continue on me as long as the court hearing continues in Barbados. In September, just after Ye filed his Ye3 to the court, and when my lawyer Mr. Alrick Scott, KC, submitted to the court that I responded as the second defendant, Mr. Fu Yingjun from Landbridge used WeChat to try to threaten me again, i.e., used the WeChat pat function "pat" me on wechat without saying any word, to remind me that they are watching at me. I personally feel unsafe and this is a threat from Landbridge Group and Chairman Ye, and they have warned me not to say any negative words about them and reminded me they have their policeman helping them and I am still inside the PRC. I attach a copy of the X WeChat screenshot together with the certified translation from Chinese to English marked "**TH-1**".

39. The police officers physically tortured me, threatened me, forced me to state some facts relating to share transfer, and sought to coerce me to alter the affidavit I filed in this matter earlier on, so as to assist Chairman Ye in succeeding on behalf of the Claimant. It was clear from the interrogation, that the police were acting for Chairman Ye and on information which Chairman Ye had given to them. I know this to be true because the police officers mentioned Chairman Ye by name during the interrogations.

40. The police's actions caused lasting harm to me, and I have to continue my medical treatment. I underwent treatment for physical and mental injuries at Xi'an International Medical Center Hospital and I am still undergoing medical treatment in the People's Republic of China up to now.

41. On March 27th, 2023, Mr. Fu Yingjun, from China Landbridge Group showed me a document with the title "Framework Agreement" but never provided with me any copy. It was purportedly signed on June 16th, 2017 by Shanghai Gorgeous and China Landbridge Group. It provided that Shanghai Gorgeous would transfer its 50% share ownership in LHI to China Landbridge for US \$125 million. It is not the same documents shown in Ye 3 as **CY4** "Framework Agreement" or any other

documents exhibited to Chairman Ye's affidavits to date. Further, it is not the Framework Agreement attached to the affidavit of Mr Zhang.

42.    Chairman Ye is a wealthy well-connected man in China, the photo evidence provided by Mr. Zhang (ZL-6 in Zhang 1) of Chairman Ye taking a photo with President Xi Jinping has proven this. It was clear during the interrogation, that the Claimant wanted to block me from giving evidence for LHI or otherwise giving evidence in court for the Defendants by using his connections in the PRC. That would have allowed the Claimant to win the case in Barbados.

43.    I was informed by my lawyers in the PRC, Ms. Liu Xiaoli and verily believe, that the Claimant wanted to file a case against me for 'illegally stealing the Claimant's shares in the First Defendant' under the crime of "fraud" or "fraud with contract". However, I was informed by my attorney and verily believe that the Claimant did not have the evidence and was unable to prove its case because it did not meet the criteria of filing a fraud criminal case.

44.    I was informed by my lawyer in China, and verily believe that the Claimant then changed from having me charged for fraud or fraud with contract. The Claimant then brought a case of "embezzlement" against me stating that I, as Chief Executive of PCCP, provided a loan of up to USD $300,000.00 to Triforce and kept all the money. I am informed by my lawyer in the PRC and verily believe that the criteria for bringing a case of embezzlement are much lower than that of the crime of "fraud" or "fraud with contract" in China. According to Article 271 of China's Criminal Law, the crime of "embezzlement" refers to "a staff member of a Chinese company who takes advantage of his or her position to illegally appropriate the property of the unit for himself, and the amount is relatively large (30,000 yuan, i.e. USD 4,300). The person shall be sentenced to fixed-term imprisonment of not more than three years or criminal detention, and shall also be fined; if the amount is huge (1 million yuan, i.e., around USD 143,000.00), the person shall be sentenced to fixed-term imprisonment of not less than three years and not more than 10 years, and shall also be fined; if the amount is particularly huge, the person shall be sentenced to fixed-term imprisonment of not less than 10 years or life imprisonment. and impose a fine." That is to say, the report provided by Landbridge Group to the police is that during Chairman Ye's tenure at PCCP, I took 300,000 US dollars in loans as my own, and the 300,000 US dollars has exceeded the "case

acceptance" of 30,000 yuan (i.e. USD 4,300) stipulated in the Chinese Criminal Law threshold. The true fact is that the agreement was signed when Mr. Zhang was CEO. The agreement was for PCCP to sign a loan of US$300,000 with its stone supplier Triforce. The supplier used its assets as collateral. Later, the loan of US$300,000 was repaid. My lawyer told me that not only did the Rizhao police have no jurisdiction over the normal business transactions between the two Panamanian companies, but the above-mentioned loan obviously did not meet the conditions for filing a case stipulated by law: (a) PCCP is not a PRC company, (b) the negotiation was with Mr. Zhang, who negotiated and executed the loan, not me; (c) the loan has been repaid; (d) even if the loan had not been repaid, it had not been taken for my personal use or possession. Such a ridiculous case was actually filed by the Landbridge Group and Chairman Ye, and the Rizhao police accepted. A true copy of the case filed by the Rizhao Policemen against me for embezzlement together with its certified translation from the original Chinese to English is exhibited hereto and marked "**TH-2**".

45. The case of embezzlement is serious and was brought to force me to give evidence on behalf of Chairman Ye and the Claimant. The charge is serious too because the loan to Triforce occurred in Panama between two Panamanian companies and was repaid, and yet I was charged in China. The potential imprisonment for me is 10 years. I held no position to negotiate that loan nor did I receive any personal benefits from that loan. I wrote to the Reporting Center of the Ministry of Public Security in Beijing on May 11th, 2023 outlining that the Economic Crime Investigation Brigade of Lanshan Branch of Rizhao Public Security Bureau, Shandong Province, and related departments assisted Shandong Landbridge Group and Ye Cheng by using the case of embezzlement against me without jurisdiction and refused to withdraw the case when there was no evidence of the crime. A true copy of my letter dated May 11th, 2023 to the Ministry of Public Security in Beijing together with a certified translation from the original Chinese to English is hereto exhibited and marked "**TH-3.**"

46. I was informed by my lawyer in the PRC that the Rizhao Police's arrest of me in Xi'an and taking me to Rizhao, where the Claimant's office is located, was illegal. I believe Rizao Police's interrogation of me was not authorized, surely not "Independent" as Ye 3 Response said. The interrogation surrounded the topic of



"shares", obtaining facts for these proceedings and getting me to assist Chairman Ye. The topic of "embezzlement" was only 1% of the whole interrogation and the rest surrounded the shares in the First Defendant. The policemen wanted me to help Chairman Ye win this case by giving evidence to support the Claimant's case. I refused and as a result, I was tortured and lost my freedom to leave China. I attach hereto and mark "**TH-4** ", evidence of my hospital treatment during and after my interrogation in the original Chinese language with a certified translation from its original Chinese language to English.

47.    Chairman Ye states, in para 46 of his September 17th, 2023 affidavit, that the policemen "independently" investigate me. That is not true. The investigation from day 1 was driven by Chairman Ye. The Claimant and Chairman Ye were actively involved in the whole procedure. I know this from, for example: (a) the Claimant filing the "false" information of embezzlement to start the procedure, (b) agents of the Claimant (Tianlin, Fuyingjun and Stephen ) active involvement in the interrogation, (c) I personally saw the police officer talk and smoke with the Claimant's agent inside the police station discussing the case, and (d) policemen leaking my personal email to the Claimant or the Claimant's agents so that the Claimant or Chairman Ye could provide the Claimant's Barbadian with an email address to serve me with documents via my email. There was no other way the Claimant's lawyers in Barbados would know my email address.

48.    My lawyers in China provided me with a legal opinion in which they state that I did not commit the crime of "fraud" and that Chinese police have no jurisdiction over "embezzlement" or "fraud". I attach hereto and mark "**TH-5**"a copy of the legal opinion in its original Chinese language and a certified translated version from its original Chinese language to English.  Also attached hereto and marked **"TH-6"** is an official translation from Chinese to English of an Application form For Cancelling and Changing Compulsory Measures. I will rely on **"TH-5"** and **"TH-6"** for their full content, force and effect.

49.    The Claimant brought this case relating to the transfer of shares in Barbados relating to a project in Panama. Yet ironically, the Claimant did not bring any criminal case in either Panama or Barbados, only in China, where the Claimant and Chairman Ye have high political connections and influence.



## RESPONSE TO YE 2

50.  Ye 2 deals, in several paragraphs with the Disputed Transfer form dated July 28th, 2020 which transferred 500 shares from the Claimant to Sinolam. Further, he repeats allegations made in Ye 1. I do not intend to respond to each paragraph.

51.  The Disputed Transfer form is not a fraud as alleged by Chairman Ye. As stated before, Chairman Gao had arranged for the share transfer form with Chairman Ye's signature to be sent to me by Chairman Gao. I do not recall which international courier was used by Chairman Gao to send the forms to me. The instructions from Mr Zhang were to have the documents notarized in Panama before filing in Barbados. I had no reason to doubt the authenticity of the Disputed Transfer form because there is no difference between these forms and the forms sent to me by Chairman Gao's arranger in 2017 (that is, the transfer of 51% of the shares to the Claimant).  As I understood from Mr Zhang, the Claimant transferred the 500 shares to Sinolam as requested and directed by Chairman Gao, on the basis that the Claimant was made a shareholder on paper for the purpose of obtaining loans from banks in the PRC.

52.  The Disputed Transfer form was in fact witnessed by a notary. I was the person who arranged for it to be notarized. There was never any contention that Chairman Ye was present in Panama when he signed the Disputed Transfer form.  The Disputed Transfer form was witnessed and authenticated in accordance with the laws and practices of Panama, as I knew them then.  As indicated before, I had documents notarized before in the same way as I had the share transfer form and letters of resignation authenticated. I attended personally before the notary public to have the share transfer form and letters of resignation notarized.

53.  I deny that I was actively involved in the management of Sinolam at any time. I worked for Mr Zhang. I was aware that Chairman Gao was detained in the PRC in 2020 but Mr. Zhang told me that Chairman Gao soon left the police station and entered the hospital to recuperate. He was in hospital which means he was free to sign any document at the time. From the information supplied to me by Mr Zhang, Chairman Gao was not detained in the police station at the time the share transfer form was executed.  Chairman Gao's signature on the Disputed Transfer has not been forged and Chairman Ye is making allegations of which he has no evidence, but more so, on which he is wrong.

54. The Claimant's shareholding in LHI was not illegally transferred. Further, I was not illegally appointed to the board of directors of LHI. I was appointed by the resolution of the board of LHI by the sole shareholder. When a transfer was done without the consent of Chairman Ye, it was because his consent was not required.

55. Chaiman Ye has raised questions about my address. Chairman Ye has been trying to find my address, and I believe that of Mr Zhang, so that he can coerce me to help him or at least stay away from the lawsuit, and not give any evidence. Chairman Ye's efforts began around mid-2022 when he sent his thugs and relatives, Mr. Fu Yingjun to Panama. From that time on, I had to change my place of residence frequently. The address where I used to live was PH Bayfront 1207. This house was rented by me from Mr. Viascheslau Epifanoc. It was originally a long-term lease, but after Fu Yingjun came to Panama, many people told me that people were looking for me and Mr Zhang, so for safety reasons, I was forced to terminate the lease agreement early and move out. However, in relation to my first affidavit, the lawyer told me that I must provide my address in the affidavit. Since I don't have a fixed address, I could only write down my previous address. Because I am familiar with the receptionist, I am sure that I have a way to receive any correspondence delivered to the address. I fear for my safety. I believe that for safety reasons, Mr Zhang also left the apartment in Panama where he had lived for many years and hid after Fu Yingjun came to Panama to threaten him.

56. Chairman Ye has sought to create the illusion that Mr Zhang and I were and are both hiding because of malicious fraud on our part. I am hiding, not to avoid responsibility, but for my personal safety. What has happened to me in the PRC confirmed that my fears for my safety were and are justified. If the police could drive to Xi'an, arrest me at the airport, and take me back to Rizhao City, then I should be concerned for my safety.

57. Since I am currently under persecution and cannot leave China, for safety reasons, I do not want to disclose my temporary current address because Chairman Ye or the Claimant or the police can come to me at any time to persecute me. I confirm that I can only live in a short-term rental at the moment. I request permission not to disclose my address.

**RESPONSE TO YE 3**

58.  Ye 3 repeats several allegations already made in Ye 1 and Ye 2 which I have already responded to.

59.  I cannot speak to the relationship between Chairman Gao and Chairman Ye.  And as said before, I was not a party to the discussions between Chairman Gao and Chairman Ye and cannot speak to any alleged discussion between Chairman Ye and Chairman Gao.

60.  I arranged meetings for Mr Zhang and was aware of the board and other meetings and the persons attending board and shareholders meetings.  Chairman Ye has never attended a meeting of shareholders or of the board of LHI in Panama or any place else, to my knowledge.  Chairman Ye visited Panama as a front for the Panama Project because of his governmental connections in the PRC, to show that the Panama Project had the support of the PRC government.  Chairman Ye visited Panama only more than a few times.  Chairman Ye never participated in a board meeting or extraordinary meeting of the shareholders as chairman of PCCP or any of the Panama Project companies.  I would know this because I knew of meetings of the board and shareholders and meetings which Mr Zhang attended.

61.  Neither Chairman Ye nor employees of the Claimant made management decisions concerning LHI.  Neither Chairman Ye nor any person connected to him, for example, signed cheques, or controlled bank accounts or was in any way involved in the finances of Panama Project Companies.  I am the only one who signed cheques for the Panama Project companies and for LHI.  One would think that if Chairman Ye or the Claimant had a real substantial financial interest in LHI and the Panama Project Companies they would have been involved in that key area of LHI and the Panama Project Companies.

62.  Stephen worked in Panama for less than one year, but on securing the loan finance from the PRC.  He was not involved in the management of the Panama Project Companies.  I worked closely with Yak Lok Stephen Chung.

63.  Importantly, Chairman Ye confirmed my arrest and detention by police from his home province.  I would not expect him to confirm his improper involvement in the investigation or that I was tortured.  Chairman Ye and the Claimant perpetrated the investigation, my arrest, interrogation, and torture.  The investigation was not

independent, as Chairman Ye's persons were involved in the investigation as indicated above. The arrest, interrogation, and torture were aimed at getting me to give evidence for the Claimant and Chairman Ye against Mr Zhang. As indicated above, I was advised that my arrest, investigation, and torture did not comply with PRC criminal laws. It shows that Chairman Ye would go to any length to get shares in LHI and exploit the death of Chairman Gao.

64.     As stated before, I have had several documents notarized in the same way that the disputed share transfer form and letters of resignation were notarized. Mr Zhang had informed me and I had believed and still believe that Chairman Ye had authorized the use of the passport to authenticate the share transfer form and the letter of resignation. I had, and still do not have any reason to believe that the share transfer form was a forged document.

65.     Except as specifically admitted, the matters set out Ye 1, Ye 2 and Ye 3 are denied. The Claimant is put to strict proof of the alleged forgery of the Disputed Transfer form and the matters alleged in Ye1, Ye 2 and Ye 3.

SWORN TO by the deponent the said
**TINGYUN HAN**
this  /    day of October 2023

Before me:

_____

NOTARY PUBLIC

<u>NOTARIAL CERTIFICATE</u>

I,                                           of
Notary Public in and for
DO HEREBY CERTIFY that on the day written above **TINGYUN HAN**, known to me by due identification to be the executing party to the above-written AFFIDAVIT, personally came and appeared before me and in my presence did duly sign the same as and for her free and voluntary act and deed.

**IN TESTIMONY** whereof I have hereunto set my hand and affixed my seal of office this           day of October 2023.

_____
NOTARY PUBLIC

This Affidavit is filed on behalf of the Second Defendant.

Filing Attorney: Mrs. Shamora Scott-Springer
Psalters Business Hub
Salters Main Road
St. George, BB19041

No.: (246) 425-0995
Email: shamora@virtuslegal.com

Advocate Attorney: Mr. Alrick Scott, KC
Psalters Business Hub
Salters Main Road
St. George,
Barbados

No.: (246) 425-0995
Email: alrick@virtuslegal.com



## SUPREME COURT OF BARBADOS

## IN THE HIGH COURT OF JUSTICE

CLAIM NO.    CV0083/ 2023

**BETWEEN:**

| | |
|---|---|
| **LANDBRIDGE PORT SERVICES (HONG KONG) LIMITED** | **CLAIMANT** |

**AND**

| | |
|---|---|
| **LANDBRIDGE HOLDINGS INC.** | **FIRST DEFENDANT** |
| **TINGYUN HAN** | **SECOND DEFENDANT** |
| **SINOLAM CONSULTING & TRADING HOLDINGS PTE** | **THIRD DEFENDANT** |
| **LIANG ZHANG** | **FOURTH DEFENDANT** |
| **GORGEOUS COLON HOLDINGS CO. LIMITED** | **FIFTH DEFENDANT** |

---

## EXHIBITS

---



These are copies of Exhibits "TH-1" to "TH-5" referred to in the Second Affidavit in Answer of the Second Defendant Tingyun Han.

| | |
|---|---|
| "TH-1" | X We-chat screenshot |
| "TH-2" | Case filed by Rhaizo Policemen |
| "TH-3" | Letter dated May 11th, 2023 addressed to Ministry of Public Security, Beijing |
| "TH-4" | Evidence of hospital treatment |
| "TH-5" | Legal Opinion |
| "TH-6" | Application form For Cancelling and Changing Compulsory Measures |

_____

NOTARY PUBLIC

# 公　证　书

（2023）沪浦证外字第 17703 号

　　申请人：韩汀云，女，1991 年 9 月 27 日出生，公民身份号码：630103199109271289。

　　公证事项:签名

　　兹证明韩汀云于 2023 年 10 月 17 日来到我处，在本公证员的面前，在前面的英文文件上签名。

　　本公证书仅证明申请人的签署行为属实，所签署文件内容的真实性由申请人负责。

中华人民共和国上海市浦东公证处

公　证　员　



LI 27697865



扫码在线核验本公证书真伪

Translation

# Notarial Certificate

(2023)H.P.Z.W.Z.No.17703

Applicant: HAN Tingyun, female, born on September 27, 1991, Citizen ID No.: 630103199109271289

Notarial Matters: Signature

This is to certify that HAN Tingyun came to my office on October 17, 2023 and signed her name on the preceding English Document before me.

This Notarial Certificate only proves that the applicant's signature is true and the applicant shall take responsibilities on the authenticity of the signed document.

Notary Public: Lyu Shiyi
(Seal)

Shanghai Pudong Notary Public Office
The People's Republic of China
(Seal)

Dated this on October 17, 2023

L I 27696088

# EXHIBIT "TH-1"





| | Fu Yingjun Richwin |
|---|---|
| | Weixin ID: fuyingjun123 |
| | Region: Rizhao City Shandong province |
| Edit Contact: | Myself Only |
| Privacy: | Chats Only |
| Moments | |
| More | |
| Send Message | |
| You have added the user to the blacklist and you will no longer receive messages from the user. | |
| Complain to the supervisor | |



Fu Yingjun Richwin

At 02:18 am on December 28, 2021

Fu Yingjun Richwin: Send me a message when you see it

At 02:53 am on December 28, 2021

Fu Yingjun Richwin: Have you returned to your home country

December 28, 2021 10:02 AM

Fu Yingjun Richwin: Xiao Han, are you there

December 28, 2021 10:08 AM

Fu Yingjun Richwin: Have you returned home yet

07:34 am on January 1, 2022

Fu Yingjun Richwin: Coming back?

12:24 noon on September 19th

"Fu Yingjun Richwin" tickled "I'm so happy♪"



# EXHIBIT "TH-2"
# (ENGLISH)



## Lanshan Branch of Rizhao City Public Security Bureau
## Summons

LAN GONG (by) summons word [2023] No. 030314

In accordance with the provisions of Article 119 of the "*Criminal Procedure Law of the People's Republic of China*", the criminal suspect Han Tingyun is hereby summoned due to duty embezzlement (gender: female, birthdate: September 27, 1991, residence address: No. 25, Gaoxin 1st Road, Yanta District, Xi'an City, Shaanxi Province went to the case-handling area of the Airport Public Security Bureau of the Shaanxi Provincial Public Security Department at 17:00 on March 14, 2023 for receiving interrogation. One who refuses to accept the summons without justified reasons may be summoned by arrest according to law.





Lanshan Branch of Rizhao City Public Security Bureau
March 14, 2023

This page should be handed over to the person being summoned



## Lanshan Branch of Rizhao City Public Security Bureau
## Decision on Residential Surveillance

LAN GONG (by) surveillance word [2023] No. 32

The suspect Han Tingyun, female, born on September 27, 1991, residential address: No. 25, Gaoxin 1st Road, Yanta District, Xi'an City, Shaanxi Province.

Our bureau is investigating the case of duty embezzlement of Shandong Landbridge Group, as the conditions for arrest are met, due to the special circumstances of the case or the need for handling the case to make it more appropriate, and the residential surveillance measures are more appropriate, according to the Articles No. 74 and No. 75 of Criminal Procedure Law of the People's Republic of China, we decided to implement the residential surveillance at a designated location for the criminal suspect at No.22 Chedingshan Road middle part of Rizhao Lanshan district, executed by Rizhao city Public Security Bureau Lanshan Branch Economic Crime Investigation Brigade, and the residential surveillance period starts from March 16, 2023.

During the period of residential surveillance, the person under residential surveillance shall abide by the following provisions:

(1) It shall not leave the premises for residential surveillance without the approval of the enforcement authority;

(2) It shall not meet with others or communicate without the approval of the enforcement authority;

(3) It shall present in time when receiving arraignment;

(4) it shall not interfere with the testimony of witnesses in any form;

(5) It shall not destroy, forge evidence or make confessions:

(6) It shall submit the passport and other exit and entry documents, identity documents and driving licenses to the enforcement authority for preservation.

If the person under surveillance violates the above provisions and the circumstances are serious, he/she may be arrested; if arrest is required, it may be detained first.

Lanshan Branch of Rizhao City Public Security Bureau

March 16, 2023

This page should be handed over to the person who under residential surveillance





## Lanshan Branch of Rizhao City Public Security Bureau
## Notice of execution of bail pending trial

LAN GONG (by) execution of obtaining bail pending trial word [2023] No. 189

Yanta Branch of Xi'an Public Security Bureau:

As Han Tingyun may be <u>sentenced to fixed-term imprisonment or more punishment, taking bail pending trial will not cause danger in society,</u> our bureau is investigating the case of duty <u>embezzlement suffered by Shandong Landbridge Group</u> and we decided to execute the bail pending trial to the crime suspect Han Tingyun (<u>female</u>, date of birth: <u>September 27, 1991</u>, residential address<u>: west door, Second floor, Unit 4 of some building, Changqingfang Community, Yanta District, Xi'an city, Shaanxi Province</u>, her working unit and occupation<u>: Shanghai Gorgeous Investment Group Co., LTD.</u>, contact information +86 <u>15003662275 / +86 18697210900</u>). We hereby submit the measure to your part for execution, the period of bail pending trial shall be calculated from March 27, 2023.

The person released under bail shall pay the bail of (in words) ten thousand yuan only.



Lanshan Branch of Rizhao City Public Security Bureau
March 27, 2023

This page should be handed over to the unit of execution.

Case number: A3711030200002022065003





# Lanshan Branch of Rizhao City Public Security Bureau
## Notice of collection of bail

LAN GONG (by) collection of security deposit [2023] No. 184

Han Tingyun:

In accordance with the provisions of Article 68 and Article 72 of the *Criminal Procedure Law of the People's Republic of China*, please present this notice to the Lanshan Branch of the Agricultural Bank of China before March 27, 2023 to pay the bail for pending trial of (in words) ten thousand yuan only.



Lanshan Branch of Rizhao City Public Security Bureau

March 27, 2023

This page should be handed over to the person who will be under bail pending trial

Case number: A3711030200002022065003



## Lanshan Branch of Rizhao City Public Security Bureau
## Decision on bail pending trial

LAN GONG (by) execution of obtaining bail pending trial word [2023] No. 189

The suspect Han Tingyun, female, date of birth: September 27, 1991, residential address: west door,Second floor, Unite 4 of some building, Changqing fang Community, Yanta District, Xi'an city, Shaanxi Province, her unit and occupation: Shanghai Gorgeous Investment Group Co., LTD., contact information +86 15003662275 / +86 18697210900).

Our bureau is investigating the case of duty embezzlement suffered by Shandong Landbridge Group; as the criminal suspect Han Tingyun may be sentenced to fixed-term imprisonment or more punishment, taking bail pending trial will not cause danger in society, according to the Article 67,paragraph No.1(2) of *Criminal Procedure Law of the People's Republic of China*, we decided to execute the bail pending trial to the crime suspect Han Tingyun, the period of release under bail pending trial shall be calculated from March 27, 2023.

The Suspect should pay the bail of (in words) ten thousand yuan.



Lanshan Branch of Rizhao City Public Security Bureau

March 27, 2023

This page should be handed over to the person who will be under bail pending trial

Case number: A3711030200002022065003



## List of Return

| No. | Name | Quantity | Feature | Remarks |
|---|---|---|---|---|
| 1 | Mobile phone (mobile phone) | One | Mobile phone model Samsung brand SM-9180 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Case handled by: 张 · 冉礼春 之 国

March 27, 2023

This page should be handed over to the recipient.

Case number: A3711030200002022065003



# Lanshan Branch of Rizhao City Public Security Bureau
## Summons

LAN GONG (by) summons word [2023] No. 55

Han Tingyun:

In accordance with the provisions of paragraph 1.3 of Article 71 of the *Criminal Procedure Law of the People's Republic of China*, we hereby inform you to go to the Economic Crime Investigation Brigade of Lanshan Branch of Rizhao Public Security Bureau at 09:00 a.m on July 25, 2023 to receive interrogation.



The Economic Crime Investigation Brigade of Lanshan Branch of Rizhao City Public Security Bureau
July 20, 2023



This page should be handed over to the person to be summoned or his/her family

Case number: A3711030200002022065003



# EXHIBIT "TH-2"
## (CHINESE)



日照市公安局岚山分局
# 传　唤　证

岚公（经）传唤字〔2023〕030314 号

　　根据《中华人民共和国刑事诉讼法》第一百一十九条之规定，兹
传唤涉嫌　职务侵占　罪的犯罪嫌疑人　韩汀云　（性别　女　，出生
日期　1991年09月27日　，住址　陕西省西安市雁塔区高新一路25号　）
于　2023年 03月 14日 17时到　陕西省公安厅机场公安局办案区
接受讯问。无正当理由拒不接受传唤的，可以依法拘传。



2023 年 03 月 14 日

此联交被传唤人



## 日照市公安局岚山分局
# 监视居住决定书

岚公（经）监居字[2023]32号

犯罪嫌疑人韩汀云性别女，出生日期1991年09月27日，住址陕西省西安市雁塔区高新一路25号附1号。

我局正在侦查山东岚桥集团有限公司被职务侵占案，因符合逮捕条件，因为案件的特殊情况或者办理案件的需要，采取监视居住措施更为适宜的，根据《中华人民共和国刑事诉讼法》第七十四条、七十五条之规定，决定在日照市岚山区娇顶山路中段22号对犯罪嫌疑人指定居所监视居住，由日照市公安局岚山分局经济犯罪侦查大队负责执行，监视居住期限从2023年03月16日起算。

在监视居住期间，被监视居住人应当遵守下列规定：

（一）未经执行机关批准不得离开执行监视居住的处所；

（二）未经执行机关批准不得会见他人或者通信；

（三）在传讯的时候及时到案；

（四）不得以任何形式干扰证人作证；

（五）不得毁灭、伪造证据或者串供；

（六）将护照等出入境证件、身份证件、驾驶证件交执行机关保存。

如果被监视居住人违反以上规定，情节严重的，可以予以逮捕，需要予以逮捕的，可以先行拘留。

日照市公安局岚山分局

二〇二二年三月十六日

此联交被监视居住人

案件编号：A3711030200002022065003



### 日照市公安局岚山分局
# 取保候审执行通知书

岚公（经）取保字[2023]189号

西安市公安局雁塔分局：小寨派出所.

    因韩汀云可能判处有期徒刑以上刑罚，采取取保候审不致发生社会危险性，我局正在侦查山东岚桥集团有限公司被职务侵占案决定对犯罪嫌疑人韩汀云（性别女，出生日期1991年09月27日，住址陕西省西安市雁塔区长庆坊小区某一楼4单元2楼西户，单位及职业上海国之杰投资发展有限公司，联系方式15003662275/18697210900）取保候审，交由你单位执行，取保候审期限从2023年03月27日起算。

    被取保候审人交纳保证金（大写）壹万元整。



日照市公安局岚山分局

二〇二三年三月二十七日

此联交执行单位

案件编号：A3711030200002022065003

 

# 日照市公安局岚山分局
# 收取保证金通知书

岚公（经）收保字[2023]184号

韩汀云：

　　根据《中华人民共和国刑事诉讼法》第六十八条、第七十二条之规定，请持此通知书于2023年03月27日之前到中国农业银行岚山支行交纳取保候审保证金（大写）壹万元整。



日照市公安局岚山分局

二〇二三年三月二十七日

此联交被取保候审人

案件编号：A3711030200002022065003




# 日照市公安局岚山分局
## 取保候审决定书

岚公（经）取保字[2023]189号

犯罪嫌疑人韩汀云性别女，出生日期1991年09月27日，住址陕西省西安市雁塔区长庆坊小区某一楼4单元2楼西户，单位及职业上海国之杰投资发展有限公司，联系方式15003662275/18697210900。

我局正在侦查山东岚桥集团有限公司被职务侵占案，因犯罪嫌疑人韩汀云可能判处有期徒刑以上刑罚，采取取保候审不致发生社会危险性，根据《中华人民共和国刑事诉讼法》第六十七条第一款第（二）项之规定，决定对其取保候审，期限从2023年03月27日起算。犯罪嫌疑人应当交纳保证金（大写）壹万元整。



日照市公安局岚山分局

二〇二三年三月二十七日

此联交被取保候审人

案件编号：A3711030200002022065003




# 发 还 清 单

| 编号 | 名称 | 数量 | 特征 | 备注 |
|---|---|---|---|---|
| 1 | 移动电话(手机) | 1部 | 手机型号三星牌SM-9180 | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

办案人： 2023年03月27日

此联交领取人

案件编号：A3711030200002022065003



# 日照市公安局岚山分局
# 传 讯 通 知 书

岚公（经）传讯字[2023]55号

韩汀云：

　　根据《中华人民共和国刑事诉讼法》第七十一条第一款第三项之规定，现通知你于2023年07月25日09时到日照市公安局岚山分局经济犯罪侦查大队接受讯问。



日照市公安局岚山分局经济犯罪侦
查大队
二〇二三年七月二十日

此联交被传讯人或其家属

案件编号：A371103020000202022065003





EXHIBIT "TH-3"
(ENGLISH)



To the Reporting Center of the Ministry of Public Security,

Hello!

I am Han Tingyun, female, born on September 27, 1991, and of Han nationality. My residential address is Changqingfang, Yanta District, Xi'an City, Shaanxi Province, and my contact number is +86 15003662275 and my ID number 630103199109271289.

My designated lawyer is Liu Xiaoli from Jingheng Law Firm.

I am reporting to you that the Economic Crime Investigation Brigade of the Lanshan Branch of Rizhao Public Security Bureau, Shandong Province, and related departments assisted **Shandong Landbridge Group and Ye Cheng in charging duty embezzlement against me without jurisdiction and refused to withdraw the case when there was no evidence of the crime.**

Facts and reasons:

1. Regarding the loan contract signed between PCCP and Triforce on April 10th, 2018 with a loan amount of USD 300,000, I would like to clarify that this event does not constitute a crime of duty embezzlement by PCCP for the following reasons.

1.1. At the time of signing the above loan contract, I, Han Tingyun, did not hold any position in PCCP, and I just had labor relation with the Panama GEE Company at that time.

1.2. I never misappropriated the loan, and the borrower provided raw materials to PCCP as usual. In addition, the loan was negotiated and implemented by Zhang Liang, the general manager of PCCP.

1.3. I did not commit any embezzlement in this case. According to my recent information, the loan has been fully repaid to PCCP (see attached Triforce Repayment information and the translated version).

1.4. The loan was a normal commercial borrowing, and the company adopted normal mechanisms such as mortgage of the other company's equity and extension measures to ensure repayment, which belonged to normal commercial behavior. I do not have any shares in Triforce, nor have I gained any benefits from the loan.

2. The Lanshan Branch of Rizhao Public Security Bureau in Shandong Province has no jurisdiction over PCCP-related matters.

2.1. PCCP is a Panamanian company, not a Chinese company.

2.2. PCCP's shareholder is a Barbados company, not Chinese company.

2.3. Landbridge Group is not a victim. Even if there were a victim, it should be PCCP, rather than Shandong Landbridge Group (hereinafter referred to as Landbridge). As of now, Landbridge has never owned any shares in PCCP. Currently, it claims that it holds 51% of the shares of PCCP, but such claim is still under civil litigation in Barbados. Before the Barbados court rules in favor of Landbridge, Landbridge does not hold any shares in PCCP; therefore, Landbridge is not a victim in this case. Moreover, even if Landbridge won the civil dispute in Barbados, the victim is still PCCP, not Landbridge. Moreover, Landbridge is not the only shareholder of PCCP; whether the





above-mentioned loan caused any loss to PCCP and whether PCCP reported it as a crime should be decided by the joint venture company PCCP or by the shareholders of the joint venture. Landbridge does not have the qualification to report it as a crime unilaterally.

2.4. Regarding Landbridge's so-called equity embezzlement, I was just an employee who performed normal work, and my work could be easily replaced; in fact, I did nothold any position in the company and I did not involve in the corresponding equity embezzlement.

3. Landbridge's overseas equity dispute with others belongs to overseas civil case, and Rizhao Public Security Bureau in Shandong Province should not actively intervene with it according to Chinese criminal law.

4. In April 2023, I reported through an online platform that the Lanshan Branch of Rizhao Public Security Bureau actively intervened in overseas civil litigation. On May 9, 2023, I received a phone call from Rizhao Public Security Bureau stating that it had the right to file the case for investigation and intervene in it but refused to provide any written supporting documents.

5. The Economic Crime Investigation Department of the Lanshan Branch of Rizhao Public Security Bureau in Shandong Province requested me to provide information that I have never seen before and asked me to confess my crime.

6. The Economic Crime Investigation Department of the Lanshan Branch of Rizhao Public Security Bureau in Shandong Province filed a case against me without sufficient evidence provided by Landbridge Group and charged me with an unfounded accusation. As of today, I am still in custody awaiting trial, and there has been no substantive progress from the Economic Crime Investigation Department of the Lanshan Branch of Rizhao Public Security Bureau in Shandong Province, which has not cleared my name but still restricts my personal freedom.

7. In a situation where there is no clear evidence that a crime of duty embezzlement has occurred and my lawyer has submitted relevant loan repayment evidence and applied for withdrawal of the case, Rizhao Public Security Bureau in Shandong Province deliberately delayed withdrawing the case, seriously affecting my work and life.

Based on the above reasons, I request that the Reporting Center of the Ministry of Public Security investigate the Economic Crime Investigation Brigade of the Lanshan Branch of Rizhao Public Security Bureau in Shandong Province and demand that it immediately withdraw this case. This case has caused serious physical and psychological damage to me and has caused me to suffer significant economic losses. I will also take appropriate legal measures to protect my legitimate rights and interests.

Sincerely,

Reporter: Han Tingyun

Date: May 11th, 2023





# EXHIBIT "TH-3"
## (CHINESE)



尊敬的公安部举报中心，

您好！

实名举报人：韩汀云，女，1991年9月27日出生，汉族，住陕西省西安市雁塔区长庆坊，联系方式：15003662275，身份证码：630103199109271289。

指定代理律师：刘晓丽，京衡律师事务所。

举报事项：山东省日照市公安局岚山分局经济犯罪侦查大队及相关部门在无管辖权的情况下协助山东岚桥有限公司&叶成针对韩汀云个人的被职务侵占案，**并在该案件无证据罪名成立的情况下拒不撤销案件。**

事实和理由：

1. 针对巴拿马公司PCCP与Triforce于2018年4月10日签署借款为30万美金的借贷合同，本人再次澄清该事件并不构成巴拿马公司PCCP职务侵占罪，原因如下：

1.1. 上述接待合同签署时，本人韩汀云并不担任PCCP任何职务，且当时我的劳动系隶属于巴拿马GEE公司。

1.2. 本人韩汀云从未挪用该贷款，且借款方正常提供原料给PCCP。此外该贷款由PCCP总经理张亮谈判并实施。

1.3. 该事件中本人无任何侵占的行为。据本人最近了解，该贷款已经完全归还PCCP公司。（详情参见附件：Triforce还借款及翻译Triforce还借款）

1.4. 该贷款是正常的商业借款行为，且公司采取正常机制抵押对方公司股权、展期等措施确保回款，属于正常商业行为。本人不在Triforce拥有任何股份，本人也未从该借款中获得任何利益。

2. 山东省公安局岚山分局针对巴拿马PCCP公司相关事宜不具有管辖权。

2.1. PCCP为巴拿马公司，不是中国公司。

2.2. PCCP股东为巴巴多斯公司，不是中国公司。

2.3. 岚桥集团不是受害方。即使有受害人，也是PCCP公司，并非山东岚桥有限公司（以下简称"岚桥"）。截至到现在，岚桥对PCCP公司从未拥有任何股份，目前其主张所谓持有的51%的股份尚在巴巴多斯的民事纠纷审理中，在巴巴多斯法院裁定岚桥胜诉前，岚桥不持有任何PCCP的股份，因此岚桥不是本案受害方。再者，即使岚桥在巴巴多斯民事纠纷中胜诉，受害方也是巴拿马PCCP公司而非岚桥。岚桥并非PCCP的100%唯一股东，上述借款是否造成公司损失，PCCP是否报案也应该是由"合资公司"PCCP来决定，或者由双方股东共同决策，岚桥单方面不具有报案资格。

2.4. 针对岚桥所谓的股权侵占，本人只是工作员工，履行正常工作，可替代性强，并未任职，不涉及相应股权侵占。

3. 岚桥与他人海外股权纠纷属于海外民事案件，中国山东省公安局日照公安局岚山分局不应主动使用中国刑法对其进行干预。



4. 本人于 2023 年四月通过网络平台举报日照公安局岚山分局主动干预海外民事诉讼，2023 年 5 月 9 日本人接到日照市公安局给本人的电话回复称其有权立案并进行干预且**拒不出示任何书面支撑文件**。

5. 中国山东省公安局日照公安局岚山分局经侦要求本人提供我根本没有见过的资料，**要求本人自证其罪**。

6. 中国山东省公安局日照公安局岚山分局经侦在岚桥集团没有提供充足证据的情况下就对本人进行莫名须有地立案，冠以莫须有的指控罪名。截至今日，本人仍在取保候审阶段，中国山东省公安局日照公安局岚山分局经侦没有实质性进展还本人清白，仍限制本人自由。

7. 在职务侵占罪明显不成立且本人律师已经提交了相关贷款还款证据且律师提交撤销案件申请的情况下，山东省公安局日照公安局故意拖延不撤销案件，严重影响本人的工作与生活。

基于上述缘由，请公安部举报中心对山东省日照市公安局岚山分局经济犯罪侦查大队进行调查，并要求其立即撤销本案件，该案已给当事人带来巨大个人生理以及心理损伤并伴有大量经济损失，为维护本人合法权益，本人也会采取相应法律措施维护本人合法权益。

举报人：

举报日期：2023 年 5 月 11 日



# EXHIBIT "TH-4"
# (ENGLISH)



## Rizhao City Lanshan District People's Hospital

### Outpatient Medical Record

Department: Emergency Internal Medicine Clinic

Name: Han Tingyun     Gender: Female     Age: 32     Card No.: 000000728633

Visit Time: 10:26 March 16, 2023

**Chief Complaint:** Shortness of breath with numbness, and discomfort for 20 minutes

**History of present illness:** The patient experienced shortness of breath, numbness in the limbs, weakness, nausea, and retching after becoming agitated for nearly 20 minutes. The patient denied fever or diarrhea present upon arrival for the consultation.

**History of past illness:** The patient has a history of good physical health and denied any previous chronic diseases such as hypertension, heart disease, and diabetes. The patient also denied any history of infectious diseases such as hepatitis and tuberculosis. The vaccination history is unknown. The patient denied history of surgery, major trauma, or blood transfusion.

History of allergy: No history of allergy.

**Physical examination:** T: [36] ℃ P: [99] times / min R: [28] times / min Bp: [137] / [90] mmHg, the patient appeared to be mentally tense with shortness of breath and uncooperative during the physical examination. Rough breath sounds were heard in both lungs, and no dry or wet rales were detected. The heart rate was 99 beats per min with regular rhythm, the abdomen was soft, and muscle strength in all limbs was normal.

**Results of auxiliary examinations:** The blood glucose was 5.8mmol/L, but other results are still pending. An emergency electrocardiogram showed sinus rhythm with STT changes. (emergency report)

**Diagnosis:** hyperventilation syndrome;

**Suggestions on diagnosis and treatment:** 1. Provide symptomatic supportive treatment such as fluid infusion and sedation; 2. Provide urgent examination of blood routine, electrolytes, blood gas and electrocardiogram; 3. Pay attention to diet and rest, and suggest inpatient observation and treatment; 4. The patient and her family members have been repeatedly informed that the condition of the patient will change at any time; if feeling uncomfortable, the patient should visit the physician timely; 5. Due to limited emergency examination and early stage of the symptoms, some diseases cannot be completely diagnosed, and hidden diseases and other possibilities are not excluded. Please bring your medical records and drugs during the outpatient revisit. All your test results should be properly preserved for comparison in the future follow-up and treatment to see if the disease has progressed.

Prescription:

| No. | Name | Dosis | Frequency | Days | Specification | Route of administration |
|-----|------|-------|-----------|------|---------------|-------------------------|
| 3_1 | Sodium chloride injection | 250ml | Once / day | 1 day | 0.9% 250ml / bag | Intravenous drip |
| 3_2 | Potassium chloride injection | 7ml | Once / day | 1 day | 1g 10ml / dose | Add medication (to an IV |




| | | | | | | infusion) |
|---|---|---|---|---|---|---|
| 3_3 | Glucose injection | 100ml | Once / day | 1 day | 5% 100ml / bag | Intravenous drip |
| 3_4 | Calcium gluconate injection | 1g | Once / day | 1 day | 1g 10ml / dose | Add medication (to an IV infusion) |
| 4_1 | Diazepam injection | 10mg | Once | 1 day | 10mg 2ml / branch | Intravenous push |

Signature of the physician: 李波

Page 1

Rizhao City Lanshan District People's Hospital
Public Number of Supervision: +86-633-7706170



## Xi'an International Medical Center Hospital
### Outpatient Medical Record

Name: Han Tingyun    Gender: Female    Age: 31

Department: Psychosomatic Medicine Clinic    ID number: 220878509    Date: 11:19:49 March 28, 2023

**Chief complaint:** Poor mood, insomnia for more than 20 days.

History of present illness (including current medication):

The patient experienced low mood, inability to feel happiness, feeling down, uncontrollable crying, decreased interest, lack of motivation in doing anything, nervousness, worry, fear, restlessness, nausea, vomiting, headache, dizziness, muscle pain, fatigue, weakness, poor sleep quality, difficulty in falling asleep, shallow sleep with easy awakening, difficulty in falling asleep again after waking up, decreased appetite, weight loss of 5 kg for more than 20 days due to certain psychological factors. Seeking medical attention today.

History of past illness: Denied.

**Allergy history:** Unknown.

**Physical examination:** Weight 50 kg.

No significant abnormalities were found in cardiovascular, respiratory, abdominal, and nervous system examinations. Mental examination: Clear consciousness, poor mental state, evident experience of anxiety and depression.

**Auxiliary examinations:**

**Preliminary diagnosis:** Anxiety and depressive state, insomnia.

**Recommendation:** Hospitalization for treatment.

| Medical order | Frequency | Route of administration | Dosis | Days |
|---|---|---|---|---|
| Shugan Jieyu Capsules (2 caps in the morning, 2 caps in the evening.) | Twice / day | Oral | 0.72g | 1 |
| Lorazepam Tablets (Imported) (1-2 caps before sleeping) | Once / night | Oral | 0.5mg | 1 |

Signature of the physician:



Time of departure: 11:31:09 March 28, 2023



 Scan for payment

**Xi'an International Medical Center Hospital**
**Ordinary Prescription**

Date &Time: 11:27:37 March 28, 2023              Prescription No. 230300095082

Name: Han Tingyun   Sex: Female       Age: 31      Weight: 50kg    Charge Type: Self-pay

Patient Number: 220878509   Phone: +86 15003662275 Department: Psychosomatic Medicine Clinic

Diagnosis: anxiety disorder depression state, insomnia

Rp: Shugan Jieyu Capsules       (0.36g*28)* 2 boxes

Route of administration: 0.72g, oral       twice/day

Physician: Li Fang   Signature:       Check:          Signature:

Pharmacist:      Signature:              Dispense:  Signature:

Amount: CNY 100.94

Note: Please do not lose the prescription, and it is valid on the same day; if there is no special reason, the medicine will not be returned or exchanged.

Please go to the Emergency Pharmacy (2) of Gate 1F, Area D of the new building to pick up the medicine.

Note: For medical insurance patients, please go to the outpatient charge window on the first floor to pay by card.



 Scan for payment

### Xi'an International Medical Center Hospital
### PSYCHOTROPICIIPRESCRIPTION

PSYCHOTROPICII

Date&Time: 11:27:34 March 28, 2023    Prescription No. 230300095081

Name: Han Tingyun    Sex: Female    Age: 31    Weight: 50kg    Charge Type: Self-pay

Patient Number: 220878509 Phone: +86 15003662275 Department: Psychosomatic Medicine Clinic

No. of ID of the patient: 630103199109271289

Agent Name:/    Sex: /    Age:/    Agent ID card:/

Diagnosis: anxiety disorder depression state, insomnia

Rp: Lorazepam Tablets (Imported)    (0.5mg*208)* 20 tablets

Route of administration: 0.5mg, oral    once/night    Taking medicine for chronic diseases

Physician: Li Fang    Signature:         Check:         Signature:

Pharmacist:    Signature:         Dispense:         Signature:

Amount: CNY 13

Note: Please do not lose it, the prescription is valid on the same day; no special reason, the medicine will not be returned or exchanged.

Please go to the emergency pharmacy (2) of Gate 1F, Area D of the new building to pick up the medicine.

Note: For medical insurance patients, please go to the outpatient fee window on the first floor to pay by card.

## Xi'an International Medical Center Hospital
### Admission Certificate

Method of payment: ☐Self-pay ☐ health insurance ☐ business insurance ☐ other
Name: Han Tingyun          ID number: 220878509          Sex: Female
Date of birth: September 27, 1991          Nationality: Han          Occupation: Other
Place of residence: Hong Zhuan South Road Community, Yan Ta District, Xi'an City
Tel: +86 15003662275                    Id number: 630103199109271289
Admission condition: ☐ Dangerous ☐ Urgent ☑Normal ☐ Other
Department: Psychosomatic Medicine Clinic     Ward: Unit of Psychosomatic Medicine Clinic
Diagnosis:1. Anxiety, disorder, depression state
    2. Insomnia

#### Communication with patient before admission

1.Preliminary diagnosis and therapeutic scheme:

☐Clear diagnosis ☐Surgical treatment

☐Therapeutic operation ☑Internal medical treatment ☐Others

2.Has the patient and his/her families been informed of the expected treatment effects: ☑Yes
☐No

3. Has the patient and his/her families been informed of the estimated cost and length of hospitalization: ☑Yes ☐ No

4. Hospitalization advance charge: CNY 5000.00

I have read this document carefully, clearly understand it, and agree to abide by it:

Signature of the patient / family member:          Relation with the patient: in person

Date: 12:00, March 28, 2023

Signature of the physician:          Date: 12:00, March 28, 2023

Location of the department for hospitalization: Buliding B, 10F   Printing time: 11:28:21 March 28, 2023

Tips:

1. Please bring the patient's ID card to the hospital toll office on the first floor for hospitalization

procedures as soon as possible.

2. After the medical insurance patients go through the hospitalization procedures, they shall register at the medical insurance window on the first floor with the hospitalization certificate and the medical insurance related certificates (within 3 working days).

3. 3. In order to ensure your health, please go to the ward to complete the department admission procedures after the hospitalization procedures. If the admission procedures are not completed within 24 hours, our hospital will automatically handle the discharge procedures for you.

For more information, please call 96999.







# EXHIBIT "TH-4"
# (CHINESE)







# 日照市岚山区人民医院

## 门诊病历

科室：急诊内科门诊　　　　姓名：韩江云　性别：女　年龄：32岁　卡号：000000728633

就诊时间：2023-03-16 10:26

**主　　诉：** 呼吸急促伴肢体麻木不适20分钟

**现 病 史：** 患者近20分钟情绪激动后出现呼吸急促，肢体麻木，无力，恶心，干咳，无发热，无腹泻，来诊。

**既 往 史：** 既往身体健康状况可，否认高血压史、否认心脏病、否认糖尿病等慢性疾病病史。否认肝炎、否认结核等传染病史。预防接种史不详。否认手术史、否认重大外伤史，否认输血史。

**过 敏 史：** 无过敏史

**体格检查：** T：[36 ]℃　　P：[99 ]次/分　　R：[28]次/分　　Bp：[137 ]/[90 ]mmHg，精神紧张，呼吸急促，查体不合作，双肺呼吸音粗，未闻及干湿性啰音，心率 99次/分，律齐，腹部平软，四肢肌力正常。

**辅助检查结果：** 血糖5.8mmol/L。结果未回。心电图示窦律，STT改变（急诊报告）

**诊　　断：**

换气过度综合征；

**诊疗意见：** 1.给予补液、镇静等对症支持治疗；2.给予急查血常规、电解质，血气，心电图等检查；3.注意饮食及休息，建议住院观察治疗；4.已反复告知患者及家属，病情会随时出现病情变化，如有不适及时来诊；5.因急诊检查有限及疾病早期，部分疾病无法完全明确诊断，不排除隐匿性疾病及其他可能。门诊复诊时请携带您手中的病历资料和药物。您所有的检查结果都应妥善保存，在以后的随诊和治疗中要进行对照比较，以了解病情是否进展。

**处　　方：**

| 序号 | 名称 | 剂量 | 频次 | 天数 | 规格 | 给药途径 |
|---|---|---|---|---|---|---|
| 3_1 | 氯化钠注射液 | 250ml | 一次/日 | 1天 | 0.9% 250ml/袋 | 静滴 |
| 3_2 | 一氯化钾注射液 | 7ml | 一次/日 | 1天 | 1g 10ml/支 | 加药(输液) |
| 3_3 | 葡萄糖注射液 | 100ml | 一次/日 | 1天 | 5% 100ml/袋 | 静滴 |
| 3_4 | 一葡萄糖酸钙注射液 | 1g | 一次/日 | 1天 | 1g 10ml/支 | 加药(输液) |
| 4_1 | 地西泮注射液 | 10mg | 一次 | 1天 | 10mg 2ml/支 | 静推 |

医师签名：



# EXHIBIT "TH-5"
# (ENGLISH)



## Legal Opinion Letter

## Regarding the application for supervision and review of the case of Han Tingyun

To People's Procuratorate of Lanshan District:

Zhejiang Jingheng (Shanghai) Law Firm has been entrusted by Han Tao, the father of the suspect Han Tingyun, to appoint me as the defense lawyer for Han Tingyun during the investigation phase of the suspected duty embezzlement case. The entrustment procedures have been submitted to your unit. After understanding the case and based on legal provisions, the defense lawyer believes that Han Tingyun was not involved in any criminal offense. It is evidently wrong for the Lanshan Branch of Rizhao Public Security Bureau (hereinafter referred to as "Lanshan Branch") to file an investigation against Han Tingyun for the suspected duty embezzlement. Therefore, this legal opinion letter is hereby submitted in writing to request your court to supervise and review the wrong act of the Lanshan Branch in filing the case that it should not have been filed, to urge the Lanshan Branch to revoke the filing in a timely manner to protect Han Tingyun's legitimate rights and interests.

I. This case is an economic dispute between two investors; regardless of how to determine the nature of the dispute, Han Tingyun's behaviors did not constitute a criminal offense.

Firstly, according to the defense lawyer's understanding, the basic situation of this case is showed as follows: around 2015, Shanghai Gorgeous Investment Group Co., Ltd. (including other affiliated companies, hereinafter referred to as "Shanghai Gorgeous") controlled by the shareholder Gao Tianguo, and Shandong Landbridge Group Co., Ltd. (including other affiliated companies, hereinafter referred to as "Landbridge") controlled by Ye Cheng, both sides negotiated that Ye Cheng represented Gao Tianguo in the acquisition of equity in the relevant project company, but all expenses were provided by Gao Tianguo and Shanghai Gorgeous, Ye Cheng only held the entrusted shares on behalf of Gao Tianguo and Shanghai Gorgeous. Later, Landbridge and Ye Cheng acting in their capacity to sign a series of acquisition documents, and the acquisition of the project was completed in 2016. In the same year, the ultimate beneficial owner information of the shareholder of the project company registered in Barbados was registered under the name of "Gao Tianguo", and the shareholder register has been kept by Gao Tianguo (Shanghai Gorgeous) until the sale of the project in 2022. After the project was delivered in 2016, Gao Tianguo paid Landbridge through affiliated companies, and then paid for the transfer of equity from small shareholders and development funds through Landbridge's account (according to Landbridge's self-disclosed 2017 financial data, it can also prove that Landbridge acknowledged that it owed 942 million yuan to Shanghai Gorgeous, see Annex 2, page 32). At this stage, due to Shanghai Gorgeous' financing



1



needs, the financial institution required Landbridge to hold 51% of the shares, so both parties completed the share registration, and Landbridge was entrusted to hold 51% of the shares. However, according to the defense lawyer's understanding, the share registration ratio was for financing needs, and Landbridge did not actually pay for the transfer of equity. Around 2018, Landbridge refused to provide guarantees for the project company as required by the financing institution, resulting in the failure of financing. Therefore, the information received by Han Tingyun's side was that "since the financing failed, Ye Cheng's side should return the equity." Therefore, around 2020, Shanghai Gorgeous side proceeded the share transfer change procedures in accordance with the equity transfer document signed by Ye Cheng provided by Gao Tianguo. Han Tingyun was only arranged to handle some procedures on-site with the third-party organization, and had no knowledge of how Gao Tianguo and Ye Cheng signed the equity transfer documents. The above are basic facts learned by the defense lawyer from various sources for your reference during the review process.

Furthermore, Han Tingyun's position and role in the project company were not sufficient to be involved in the criminal facts investigated by the Lanshan Branch, and Han Tingyun herself did not commit any criminal acts. From the above facts, regardless of whether Ye Cheng and Landbridge actually have the corresponding equity, corporate rights and interests of the project company, Han Tingyun, as one of the employees of the project company, did not participate in the negotiation, agreement, and implementation of the specific equity transfer. She could not participate in or promote the development of facts, nor could she have any impact on Ye Cheng's shareholder rights and interests with Gao Tianguo. Therefore, the Lanshan Branch's filing against Han Tingyun is clearly wrong.

Additionally, after Han Tingyun joined Shanghai Gorgeous in 2016, her job was to assist in the work assigned by the CEO in overseas markets, conveying the CEO's instructions to overseas market employees, translated documents and handled miscellaneous tasks. Her main source of income was from such job until she resigned in early 2022. In the later stage of her service, from the second half of 2019 to early 2022, Han Tingyun was appointed as the legal representative, but her job scope did not change, and she had no decision-making power in the company. Therefore, Han Tingyun's work in the relevant company was only clerical work with strong substitutability. The part of her work could not affect the rights and interests of the major shareholders of the company. This case is an economic dispute between the two shareholders, involving whether one shareholder's rights have been infringed. The infringing party can only be the other shareholder, not a company employee. Therefore, Han Tingyun's performance did not have any real impact on Ye Cheng's equity ratio.

Besides, Han Tingyun did not participate in the specific equity transfer dispute event. During the period from 2015 to 2022, Han Tingyun did not participate in any negotiations between the two major shareholders, nor was her responsible for specific docking with Landbridge or Ye Cheng. Until later, she accepted the leader's arrangement to handle internal procedures belonging to Shanghai Gorgeous. She did




2

not handle Landbridge's share transfer procedures, nor did she participate in forging or altering the relevant equity transfer agreement. Therefore, subjectively, Han Tingyun did not know whether Ye Cheng had equity or not. Instead, subjectively, the information received by Han Tingyun was that "Ye Cheng did not have equity and was only registered as a shareholder to cooperate with financing." Therefore, Han Tingyun did not have any subjective criminal intent or criminal awareness. Objectively, Han Tingyun did not actually participate in the fact investigated by Lanshan Branch of "embezzlement of equity". Her participation was only the final registration and self-perfection procedures of one shareholder, which did not constitute any criminal offense.

In conclusion, Han Tingyun could not engage in any duty embezzlement against company assets, nor did she have any criminal intent regarding Ye Cheng's equity. Objectively, Han Tingyun did not have any criminal intent to dominate her behaviors and her behaviors did not have punishable nature. Therefore, they did not constitute illegal criminal offense.

II. Lanshan Branch does not have any jurisdiction over this case.

Firstly, the alleged crime of duty embezzlement in this case occurred overseas. According to the defense lawyer's understanding, the alleged duty embezzlement (of Ye Cheng's equity) took place overseas, and the corresponding equity transfer also took place overseas. The domicile, registration, and theproject of the project company were all located overseas. The actual beneficiary, Gao Tianguo, although deceased, received the equity transfer documents by mail from overseas when he was alive. The payment of funds and the registration of the behalf of the holder of the company were also carried out overseas. Currently, there is no evidence for or clue to the equity transfer (or part of it) taking place within the territory of China. Therefore, objectively speaking, even if there were a criminal act in this case, the place of crime occurrence and the place of crime result should be both overseas.

Besides, the Lanshan Branch filed a charge of duty embezzlement, even if the chargeis changed to fraud, embezzlement, or any other financial crimes, and if the Lanshan Public Security Bureau in Rizhao City where the victim is located has the jurisdiction over the case, the investigation should take Gao Tianguo as the target. At present, Gao Tianguo deceased, and there is no evidence to prove that Han Tingyun cooperated with Gao Tianguo to commit any act that harmed Landbridge Group. Therefore, there is no factual basis for filing an investigation against Han Tingyun.



Therefore, the Lanshan Branch's criminal filing against Han Tingyun has no legal or factual basis, and the Lanshan Branch does not have jurisdiction over this case.

III. The filing and investigation of Han Tingyun has seriously violated her legal rights and caused huge economic losses to her. Please cancel the filing immediately.

Recently, Han Tingyun frequently contacted the defense lawyer and introduced the current difficulties she is facing due to the criminal filing (see Appendix 1). According to Han Tingyun:

1. Han Tingyun urgently needs to go to the USA to study at Northwestern University,

3



and needs to apply for a US visa and other procedures. The value of the courses is at least 40,000 US dollars. If Han Tingyun missed classes in the first year, she will lose her scholarship eligibility, plus various costs such as extensions, she will suffer from huge economic losses.

2. Han Tingyun's personal company in Panama received notices from the local taxation, banks, and municipal governments to proceed urgent documents, and Han Tingyun had to handle them in person, otherwise the company would face various penalties. The banking system has issued individual punishment notices against Han Tingyun's Company, and the documents are attached here. The Panama City government requires Han Tingyun to handle the tax payment formalities, and Han Tingyun needs to sign them in person, and it is not allowed to authorize other people to act on her behalf to deal with the work.

3. Several business management incidents of Han Tingyun's Company required Han Tingyun herself to pay close attention to the connection with the local business departments in Panama to promote the project investigation.

4. Han Tingyun's ID card information in the Panama Immigration Bureau urgently needs to be updated, which has seriously affected her normal legal residence in Panama, and it is impossible to apply for reissuing such information.

To sum up, the defender believes that the Lanshan Branch has no jurisdiction over this case, and is suspected of intervening in the economic dispute. Taking a step back, even if the case is suspected of a criminal offense and the Lanshan Branch also has jurisdiction, then Han Tingyun did not commit any illegal or criminal acts, and she was performed her normal duties, but the Lanshan Branch's investigation of Han Tingyun and restricting her from leaving China have seriously violated her legal rights and interests, making the above difficulties impossible to solve. Therefore, in accordance with Article 557 of the "*Criminal Procedure Rules of the People's Procuratorate*", we apply to your unit to file a case and supervise the illegal acts of the Lanshan Branch.


Lawyer:
Date: April 17th, 2023

Attachments:
1. Several documents to be urgently proceeded by Han Tingyun;
2. "Tracking Rating Announcement" issued by Dagong International Credit Rating Co., Ltd. on March 26th, 2018 for Landbridge Group.



4

## Legal Opinion Letter

## Regarding the cancellation of the criminal case filed against

### Han Tingyun

To Rizhao City Public Security Bureau Lanshan Branch:

Zhejiang Jingheng (Shanghai) Law Firm has been entrusted by Tao Han, the father of the suspect Han Tingyun, to appoint me as the defense lawyer for Han Han Tingyun during the investigation phase of the suspected duty embezzlement case. The entrustment procedures have been submitted to your Bureau. After a recent understanding of the case and according to the law, the defense lawyer believes that this case Han Tingyun did not involve any criminal offenses. It is obviously wrong for your Bureau to file a case of duty embezzlement, and hereby I submit a lawyer's opinion in writing.

I. This case is an economic dispute between two investors, regardless of how to determine the nature of the dispute, Han Tingyun's behaviors did not constitute a criminal offense.

Firstly, according to the defense lawyer's understanding, the basic situation of this case is showed as follows: around 2015, Shanghai Gorgeous Investment Group Co., Ltd. (including other affiliated companies, hereinafter referred to as "Shanghai Gorgeous") controlled by the shareholder Gao Tianguo, and Shandong Landbridge Group Co., Ltd. (including other affiliated companies, hereinafter referred to as "Landbridge") controlled by Ye Cheng, both sides negotiated that Ye Cheng represented Gao Tianguo in the acquisition of equity in the relevant project company, but all expenses were provided by Gao Tianguo and Shanghai Gorgeous, Ye Cheng only held the entrusted shares on behalf of Gao Tianguo and Shanghai Gorgeous. Later, Landbridge and Ye Cheng acting in their capacity to sign a series of acquisition documents, and the acquisition of the project was completed in 2016. In the same year, the ultimate beneficial owner information of the shareholder of project company registered in Barbados was registered under the name of "Gao Tianguo", and the shareholder register has been kept by Gao Tianguo (Shanghai Gorgeous) until the sale of the project in 2022. After the project was delivered in 2016, Gao Tianguo paid Landbridge through affiliated companies, and then paid for the transfer of equity from small shareholders and development funds through Landbridge's account (according to Landbridge's self-disclosed 2017 financial data, it can also prove that Landbridge acknowledged that it owed 942 million yuan to Shanghai Gorgeous, see Annex 2, page 32). At this stage, due to Shanghai Gorgeous's financing needs, the financial institution required Landbridge to hold 51% of the shares, so both parties completed share registration, and Landbridge was entrusted to hold 51% of the shares. However, according to the defense lawyer's understanding, the share registration ratio was for financing needs, and Landbridge did not actually pay for the transfer of equity. Around 2018, Landbridge refused to provide guarantees for the project company as required by the financing institution, resulting in the failure of financing. Therefore, the information received by Han Tingyun's side was that "since financing failed, Ye Cheng's side should return the equity." Therefore, around 2020,



1



Shanghai Gorgeous side proceeded the share transfer change procedures in accordance with the equity transfer document signed by Ye Cheng provided by Gao Tianguo. Han Tingyun was only arranged to handle some procedures on-site with the third-party organization, and had no knowledge of how Gao Tianguo and Ye Cheng signed the equity transfer documents. The above are basic facts learned by the defense lawyer from various sources for your reference during the process.

Furthermore, Han Tingyun's position and role in the project company were not sufficient to be involved in the criminal facts investigated by your bureau, and Han Tingyun herself did not commit any criminal acts. From the above facts, regardless of whether Ye Cheng and Landbridge actually have the corresponding equity, corporate rights and interests of the project company, Han Tingyun, as one of the employees of the project company, did not participate in the negotiation, agreement, and implementation of specific equity transfer. She could not participate in or promote the development of facts, nor could she have any impact on Ye Cheng's shareholder rights and interests with Gao Tianguo. Therefore, your Bureau's filing against Han Tingyun is clearly wrong.

Additionally, after Han Tingyun joined Shanghai Gorgeous in 2016, her job was to assist in the work assigned by the CEO in overseas markets, conveying the CEO's instructions to overseas market employees, translated documents and handled miscellaneous tasks. Her main source of income was from such job until she resigned in early 2022. In the later stage of her service, from the second half of 2019 to early 2022, Han Tingyun was appointed as the legal representative, but her job scope did not change, and she had no decision-making power in the company. Therefore, Han Tingyun's work in the relevant company was only clerical work with strong substitutability. The part of her work could not affect the rights and interests of the major shareholders of the company. This case is an economic dispute between the two shareholders, involving whether one shareholder's rights have been infringed. The infringing party can only be the other shareholder, not a company employee. Therefore, Han Tingyun's performance did not have any real impact on Ye Cheng's equity ratio.

Besides, Han Tingyun did not participate in the specific equity transfer dispute event. During the period from 2015 to 2022, Han Tingyun did not participate in any negotiations between the two major shareholders, nor was her responsible for specific docking with Landbridge or Ye Cheng. Until later, she accepted the leader's arrangement to handle internal procedures belonging to Shanghai Gorgeous. She did not handle Landbridge's share transfer procedures, nor did she participate in forging or altering the relevant equity transfer agreement. Therefore, subjectively, Han Tingyun did not know whether Ye Cheng had equity or not. Instead, subjectively, the information received by Han Tingyun was that "Ye Cheng did not have equity and was only registered as a shareholder to cooperate with financing." Therefore, Han Tingyun did not have any subjective criminal intent or criminal awareness. Objectively, Han Tingyun did not actually participate in the fact investigated by your Bureau of "embezzlement of equity". Her participation was only the final registration and self-perfection procedures of one shareholder, which did not constitute any



2

criminal offense.

In conclusion, Han Tingyun could not engage in any duty embezzlement against company assets, nor did she have any criminal intent regarding Ye Cheng's equity. Objectively, Han Tingyun's actions do not have any intent to dominate her behaviors and her behaviors did not have punishable nature. Therefore, they did not constitute illegal criminal acts.

II. Lanshan Branch does not have any jurisdiction over this case.

Firstly, the alleged crime of duty embezzlement in this case occurred overseas. According to the defense lawyer's understanding, the alleged duty embezzlement (of Ye Cheng's equity) took place overseas, and the corresponding equity transfer also took place overseas. The domicile, registration, and the project of the project company were all located overseas. The actual beneficiary, Gao Tianguo, although deceased, received the equity transfer documents by mail from overseas when he was alive. The payment of funds and the registration of the behalf of the holder of the company were also carried out overseas. Currently, there is no evidence for or clue to the equity transfer (or part of it) taking place within the country. Therefore, objectively speaking, even if there were a criminal act in this case, the place of crime occurrence and the place of crime result should be both overseas.

Besides, your Bureau filed a charge of duty embezzlement, even if the charge is changed to fraud, embezzlement, or any other financial crimes, and if the Lanshan Public Security Bureau in Rizhao City where the victim is located has the jurisdiction over the case, the investigation should take Gao Tianguo as the target. At present, Gao Tianguo deceased, and there is no evidence to prove that Han Tingyun cooperated with Gao Tianguo to commit any act that harmed Landbridge Group. Therefore, there is no factual basis for filing an investigation against Han Tingyun.

Therefore, your Bureau's criminal filing against Han Tingyun has no legal or factual basis, and your Bureau does not have jurisdiction over this case.

III. The filing and investigation of Han Tingyun has seriously violated Han Tingyun's legal rights and caused huge economic losses to her. Please cancel the filing immediately.

Recently, Han Tingyun frequently contacted the defense lawyer and introduced the current difficulties Han Tingyun is facing due to the criminal filing (see Appendix 1). According to Han Tingyun:

1. Han Tingyun urgently needs to go to the USA study at Northwestern University, and needs to apply for a US visa and other procedures. The value of the courses is at least 40,000 US dollars. If Han Tingyun missed classes in the first year, she will lose her scholarship eligibility, plus various costs such as extensions, she will suffer huge economic losses.

2. Han Tingyun's personal company in Panama received notices from the local taxation, banks, and municipal governments to proceed urgent documents, and Han Tingyun had to handle them in person, otherwise the company would face various penalties. The banking system has issued individual punishment notices against Han



3

Tingyun's Company, and the documents are attached here. The Panama City government requires Han Tingyun to handle the tax payment formalities, and Han Tingyun needs to sign them in person, and it is not allowed to authorize other people to act on her behalf to deal with the work.

3. Several business management incidents of Han Tingyun's Company required Han Tingyun herself to pay close attention to the connection with the local business department in Panama to promote project investigation.

4. Han Tingyun's ID card information in the Panama Immigration Bureau urgently needs to be updated, which has seriously affected her normal legal residence in Panama, and it is impossible to apply for reissuing such information.

To sum up, in view of the fact that Han Tingyun was investigated by your Bureau for investigation and restricting her from leaving China due to this case, the above-mentioned difficulties cannot be resolved. Please your Bureau review the legality of the case against Han Tingyun as soon as possible, revoke the criminal case and lift various restrictions, so as to protect Han Tingyun's legitimate rights and interests from being violated.

Lawyer:
Date: April 17th, 2023

Attachments:
1. Several documents to be urgently proceeded by Han Tingyun;
2. "Tracking Rating Announcement" issued by Dagong International Credit Rating Co., Ltd. on March 26th, 2018 for Landbridge Group.



4



# EXHIBIT "TH-5"
# (CHINESE)



# 关于对韩汀云案申请立案监督审查的律师意见书

岚山区人民检察院：

　　浙江京衡（上海）律师事务所接受犯罪嫌疑人韩汀云父亲韩涛的委托，指派我担任韩汀云涉嫌职务侵占案侦查阶段辩护律师，委托手续一并提交。经过近期了解案情并根据法律规定，辩护律师认为本案韩汀云不涉及任何刑事犯罪，日照市公安局岚山分局（以下简称："岚山分局"）以韩汀云涉嫌职务侵占罪对其立案侦查显然错误，现书面提出律师意见，申请贵院对岚山分局不应当立案而立案的错误行为进行立案监督审查，及时督促岚山分局撤销立案，以便保护韩汀云的合法权益。

　　**一、本案系两个投资人之间的经济纠纷，不论该纠纷如何定性，韩汀云的行为都不具有刑事违法性**

　　首先，根据辩护律师了解，本案的基本情况是为：2015年左右，上海国之杰投资发展有限公司（含其他关联公司，以下均简称"国之杰"）实控人高天国与山东岚桥集团有限公司（含其他关联公司，以下均简称"岚桥"）叶成经过协商，由叶成出面代替高天国收购相关项目公司的股权，但所有费用均系高天国及国之杰提供，叶成仅仅是代持股份。之后，岚桥与叶成出面签署了一系列收购文件，2016年完成项目交割。同年，在巴巴多斯登记的该项目公司的股东信息登记为"高天国"本人，且股东名册也一直保管在高天国（国之杰）处，一直到2022年出售该项目时。2016年项目交割后，高天国通过关联

1



公司先向岚桥付款，再通过岚桥账户支付收购小股东的股权转让款以及开发资金（通过岚桥自行披露 2017 年财务数据，也能证明岚桥承认向国之杰举债 9.42 亿元，见附项 2 第 32 页）。在该阶段，适逢国之杰融资需要，金融机构要求岚桥持股 51%，因此双方才进行了股权登记，岚桥持股 51%。但根据辩护律师了解，股权登记比例是为融资需要，岚桥并未实际支付股权转让款。2018 年左右，因岚桥拒绝按照融资机构要求为项目公司提供担保，故融资失败。因此，韩汀云一方接到的信息是"既然融资失败，那么叶成一方应该返还股权"。所以，在 2020 年左右，国之杰一方按照高天国提供的叶成签字的股权转让文件办理了股转变更手续，韩汀云仅仅是被安排拿文件现场配合第三方机构办理了部分手续，对于高天国与叶成的股权转让文件如何签署的毫不知情。以上是辩护律师多方了解的基本事实，供贵院在审查时参考。

其次，韩汀云在项目公司中的地位和作用，不足以参与岚山分局侦查的犯罪事实之中，其本人并没有实施任何犯罪行为。从以上事实看，不论是叶成及岚桥是否真正享有相应项目公司的股权和公司权益，韩汀云作为项目公司员工之一，都不参与具体股权转让事件的协商、合意、实施等行为中，其在事实发展上无法参与、推动，更无法与高天国一起对叶成的股东权益产生任何影响，岚山分局针对韩汀云的立案显然错误。

其一、韩汀云 2016 年入职国之杰后，工作内容就是在海外市场辅助 CEO 指派的工作、将 CEO 指令传达给海外市场员工、翻译、杂物，主要工资来源于此，直至 2022 年初离职。后期，在 2019 年下半年至 2022 年初离职前，韩汀云被任命为法定代表人，其本人工作范围也

2

没有任何变化，其对公司没有任何决策权。可见，韩汀云在案涉公司具体从事的工作仅仅是事务性工作，可替代性强，该部分工作无法作用、或影响公司大股东的权益。本案是两个股东之间的经济纠纷，涉及一个股东的权益是否被侵犯的问题，侵权方只能是另外一个股东，而不可能是公司员工。故，韩汀云的履职行为对叶成的股权比例不存在任何现实影响力。

其二、韩汀云没有参与具体股权转让争议事件。该事件从 2015 年以后直至 2022 年期间，韩汀云并未参与两个大股东之间的任何协商，本人工作也不负责具体对接岚桥或者叶成，直至后期才接受领导安排，办理了属于国之杰部分的内部手续，其并没有办理岚桥部分的股转手续，更没有参与伪造、变造案涉股权转让协议。因此，韩汀云主观上并不明知叶成是否享有股权，反而，韩汀云主观上接收的信息是"叶成不享有股权，只是为了配合融资才登记为股东"，因此韩汀云不具有任何主观犯罪故意和犯罪上的认识。客观上，韩汀云也未实际参与到岚山分局侦办的"侵占股权"这一事实中，其参与的部分仅仅是股东一方的最后登记、自我完善手续，该参与行为不具有任何刑事违法性。

综上，韩汀云不可能针对公司资产进行任何职务侵占行为，也不具有对叶成股权的任何犯罪故意，客观上韩汀云所实施的行为没有犯意支配，不具有可罚性，不属于违法犯罪行为。

### 二、岚山分局对本案不具有管辖权

首先，本案涉嫌职务侵占行为均发生在境外。根据辩护律师了解，本案中被控涉嫌职务侵占（叶成股权）的行为发生在境外，相应股权转让行为也发生在境外，项目公司住所地、注册地及项目均在境外；

3



实际权益争议方高天国虽然已经去世，但在世的时候是在境外通过邮寄方式接收的股权转让文件；资金支付、公司代持登记也均发生在境外。目前，没有任何证据线索能指向股权转让行为（或部分行为）发生在境内。故从客观上看，即便本案有犯罪行为存在，犯罪行为发生地、结果地均是在境外。

其次，岚山分局立案罪名是职务侵占，即便变更罪名为诈骗、侵占等侵财犯罪，那么作为被害人所在地的日照市岚山公安局进行案件管辖，也只能针对高天国开展侦查。目前，高天国已经去世，没有任何证据证明韩汀云配合高天国实施了侵害岚桥公司的行为。因此，针对韩汀云的立案侦查没有任何事实依据。

所以，岚山分局针对韩汀云的刑事立案没有任何法律依据和事实依据，岚山分局对本案没有管辖权。

**三、针对韩汀云的立案及侦查行为，已经严重侵害韩汀云合法权益，给其造成巨大经济损失，请立即撤销立案**

近日，韩汀云频繁联系辩护律师，介绍了目前韩汀云因刑事立案面临的困境（见附项1）。根据韩汀云介绍：

1、韩汀云急需到美国西北大学就读，申请办理美签等手续。课程价值至少4万美元，如果第一年就开始缺课将丧失奖学金资格，加上延期等各项成本支出，将会给韩汀云带来巨大的经济损失。

2、韩汀云在巴拿马的个人公司收到当地税务、银行、市政府要求处理紧急文件的通知，均需要韩汀云亲自去处理，否则公司面临各种处罚。银行系统针对韩汀云公司的个别处罚通知已经开出，附件一并提供。巴拿马市政府要求韩汀云公司办理的纳税手续需要韩汀云亲自签字，该工作无法授权其他人代办。

4



3、韩汀云公司几起商务经营事件需要韩汀云本人抓紧对接巴拿巴当地商务部门，推进项目考察。

4、韩汀云在巴拿马移民局的身份证件资料急需更新，已经严重影响韩汀云在巴拿马国家的正常合法居住，且无法补办。

综上所述，辩护人认为岚山分局对于本案没有管辖权，而且有插手经济纠纷之嫌，退一步讲，即使本案涉嫌刑事犯罪而且岚山分局也有管辖权，那么韩汀云并不存在任何违法犯罪行为，只是正常的履职行为，但是岚山分局对韩汀云立案侦查并限制出境的行为，已经严重侵犯了韩汀云的合法权益，造成上述困难无法解决。故，根据《人民检察院刑事诉讼规则》第五百五十七条的规定，申请贵院对岚山分局的违法行为进行立案监督。


律师：

时间：二零二三年四月十七日


附：

1、韩汀云提供的急需处理的几个文件；

2、大公国际资信评估有限公司 2018 年 3 月 26 日对岚桥集团出具的《跟踪评级公告》。

 2023-10-30

# 关于对韩汀云撤销刑事立案的
# 律师意见书

日照市公安局岚山分局：

浙江京衡（上海）律师事务所接受嫌疑人韩汀云父亲韩涛的委托，指派我担任韩汀云涉嫌职务侵占案侦查阶段辩护律师，委托手续已经提交贵局。经过近期了解案情并根据法律规定，辩护律师认为本案韩汀云不涉及任何刑事犯罪，贵局对其以职务侵占立案显然错误，现书面提出律师意见。

一、本案系**两个投**资人之间的经济纠纷，不论该纠纷如何定性，韩汀云的行为都不具有刑事违法性

首先，根据辩护律师了解，本案的基本情况是为：2015 年左右，上海国之杰投资发展有限公司（含其他关联公司，以下均简称"国之杰"）实控人高天国与山东岚桥集团有限公司（含其他关联公司，以下均简称"岚桥"）叶成经过协商，由叶成出面代替高天国收购相关项目公司的股权，但所有费用均系高天国及国之杰提供，叶成仅仅是代持股份。之后，岚桥与叶成出面签署了一系列收购文件，2016 年完成项目交割。同年，在巴巴多斯登记的该项目公司的股东信息登记为"高天国"本人，且股东名册也一直保管在高天国（国之杰）处，一直到 2022 年出售该项目时。2016 年项目交割后，高天国通过关联公司先向岚桥付款，再通过岚桥账户支付收购小股东的股权转让款以及开发资金（通过岚桥自行披露 2017 年财务数据，也能证明岚桥承认向国之杰举债 9.42 亿元，见附项 2 第 32 页）。在该阶段，适逢国之杰融资需要，金融机构要求岚桥持股 51%，因此双方才进行了股权登记，岚桥持股 51%。但根据辩护律师了解，股权登记比例是为融资需要，岚桥并未实际支付股权转让款。2018 年左右，因岚桥拒绝按照融资机构要

1

求为项目公司提供担保，故融资失败。因此，韩汀云一方接到的信息是"既然融资失败，那么叶成一方应该返还股权"。所以，在 2020 年左右，国之杰一方按照高天国提供的叶成签字的股权转让文件办理了股转变更手续，韩汀云仅仅是被安排拿文件现场配合第三方机构办理了部分手续，对于高天国与叶成的股权转让文件如何签署的毫不知情。以上是辩护律师多方了解的基本事实，供贵局在办案时参考。

　　其次，韩汀云在项目公司中的地位和作用，不足以参与贵局侦查的犯罪事实之中，其本人并没有实施任何犯罪行为。从以上事实看，不论是叶成及岚桥是否真正享有相应项目公司的股权和公司权益，韩汀云作为项目公司员工之一，都不参与具体股权转让事件的协商、合意、实施等行为中，其在事实发展上无法参与、推动，更无法与高天国一起对叶成的股东权益产生任何影响，贵局针对韩汀云的立案显然错误。

　　其一、韩汀云 2016 年入职国之杰后，工作内容就是在海外市场辅助 CEO 指派的工作、将 CEO 指令传达给海外市场员工、翻译、杂物，主要工资来源于此，直至 2022 年初离职。后期，在 2019 年下半年至 2022 年初离职前，韩汀云被任命为法定代表人，其本人工作范围也没有任何变化，其对公司没有任何决策权。可见，韩汀云在案涉公司具体从事的工作仅仅是事务性工作，可替代性强，该部分工作无法作用、或影响公司大股东的权益。本案是两个股东之间的经济纠纷，涉及一个股东的权益是否被侵犯的问题，侵权方只能是另外一个股东，而不可能是公司员工。故，韩汀云的履职行为对叶成的股权比例不存在任何现实影响力。

　　其二、韩汀云没有参与具体股权转让争议事件。该事件从 2015 年以后直至 2022 年期间，韩汀云并未参与两个大股东之间的任何协商，本人工作也不负责具体对接岚桥或者叶成，直至后期才接受领导安排，办理了属于国之杰部分的内部手续，其并没有办理岚桥部分的股转手续，更没有参与伪造、变造案涉股权转

让协议。因此，韩汀云主观上并不明知叶成是否享有股权，反而，韩汀云主观上接收的信息是"叶成不享有股权，只是为了配合融资才登记为股东"，因此韩汀云不具有任何主观犯罪故意和犯罪上的认识。客观上，韩汀云也未实际参与到贵局侦办的"侵占股权"这一事实中，其参与的部分仅仅是股东一方的最后登记、自我完善手续，该参与行为不具有任何刑事违法性。

综上，韩汀云不可能针对公司资产进行任何职务侵占行为，也不具有对叶成股权的任何犯罪故意，客观上韩汀云所实施的行为没有犯意支配，不具有可罚性，不属于违法犯罪行为。

二、岚山分局对本案不具有管辖权

首先，本案涉嫌职务侵占行为均发生在境外。根据辩护律师了解，本案中被控涉嫌职务侵占（叶成股权）的行为发生在境外，相应股权转让行为也发生在境外，项目公司住所地、注册地及项目均在境外；实际权益争议方高天国虽然已经去世，但在世的时候是在境外通过邮寄方式接收的股权转让文件；资金支付、公司代持登记也均发生在境外。目前，没有任何证据线索能指向股权转让行为（或部分行为）发生在境内。故从客观上看，即便本案有犯罪行为存在，犯罪行为发生地、结果地均是在境外。

其次，贵局立案罪名是职务侵占，即便变更罪名为诈骗、侵占等侵财犯罪，那么作为被害人所在地的日照市岚山公安局进行案件管辖，也只能针对高天国开展侦查。目前，高天国已经去世，没有任何证据证明韩汀云配合高天国实施了侵害岚桥公司的行为。因此，针对韩汀云的立案侦查没有任何事实依据。

所以，贵局针对韩汀云的刑事立案没有任何法律依据和事实依据，贵局对本案没有管辖权。

三、针对韩汀云的立案及侦查行为，已经严重侵害韩汀云合法权益，给其造成巨大经济损失，请立即撤销立案

3



近日，韩汀云频繁联系辩护律师，介绍了目前韩汀云因刑事立案面临的困境（见附项1）。根据韩汀云介绍：

1、韩汀云急需到美国西北大学就读，申请办理美签等手续。课程价值至少4万美元，如果第一年就开始缺课将丧失奖学金资格，加上延期等各项成本支出，将会给韩汀云带来巨大的经济损失。

2、韩汀云在巴拿马的个人公司收到当地税务、银行、市政府要求处理紧急文件的通知，均需要韩汀云亲自去处理，否则公司面临各种处罚。银行系统针对韩汀云公司的个别处罚通知已经开出，附件一并提供。巴拿马市政府要求韩汀云公司办理的纳税手续需要韩汀云亲自签字，该工作无法授权其他人代办。

3、韩汀云公司几起商务经营事件需要韩汀云本人抓紧对接巴拿巴当地商务部门，推进项目考察。

4、韩汀云在巴拿马移民局的身份证件资料急需更新，已经严重影响韩汀云在巴拿马国家的正常合法居住，且无法补办。

综上，鉴于韩汀云因本案被贵局立案侦查并限制出境，其上述困难无法解决，请贵局尽快审查对韩汀云的立案合法性，对其撤销刑事立案并解除各种限制，保护韩汀云合法权益不受侵犯。


律师：

时间：二零二三年四月十七日


附：

1、韩汀云提供的急需处理的几个文件；

2、大公国际资信评估有限公司2018年3月26日对岚桥集团出具的《跟踪评级公告》。

4



# EXHIBIT "TH-6"
# (ENGLISH)



# Application Form for Canceling and Changing

## Compulsory Measures

Applicant: Lawyer Liu Xiaoli, from Zhejiang Jingheng (Shanghai) Law Firm

Address: Building 3, Xinzhuang Center, Lane 28, Yuanxiu Road, Minhang District,

Shanghai

Tel: +86 13869468125 / +86 13122228125

Respondent: The Lanshan Branch of Rizhao City Public Security Bureau

### Reasons for application:

It is hereby to apply to the Public Security Bureau to change the compulsory measures for the criminal suspect Han Tingyun to release under bail pending trial or directly cancel the measures of residential surveillance at a designated location.

### Facts and reasons:

Zhejiang Jingheng (Shanghai) Law Firm accepted the entrustment of the criminal suspect Han Tingyun's father, Han Tao, and assigned the applicant to act as the defense lawyer for the criminal suspect Han Tingyun's suspected duty embezzlement case. The entrustment procedures and the official letter of the law firm have been submitted. In view of the fact that Han Tingyun is currently under residential surveillance at a designated location by the Public Security Bureau, the applicant is now applying in writing in accordance with the law to cancel the compulsory measures currently being applied to the criminal suspect Han Tingyun, or to change the measures to release under bail pending trial. The specific reasons are as follows:

I. This actual case was triggered by an economic dispute, and there is a huge controversy over the legal nature of the case. At present, it is not clear whether Han Tingyun is suspected of committing a crime related to her official duties or an economic crime. Therefore, it is not appropriate to take direct measures to restrict her personal freedom.



According to the applicant's understanding, the company involved in this case, which Han Tingyun was working for, and its actual controller of the company (hereinafter referred to as the "involved company"), have a civil equity dispute with the plaintiff, Shandong Landbridge Group Co., Ltd. (hereinafter referred to as "Landbridge Company"). The current conclusion of the civil dispute is favorable to the involved company, and the relevant evidence can also prove that Landbridge Company is only entrusted to hold the equity of the involved company with a nominee holding relationship. In fact, Landbridge Company did not invest and did not enjoy any shareholder rights and interests in the involved company or the involved project. Therefore, Landbridge Company does not have any substantive property rights and

1





interests, and it does not have any actual property rights and interests. The criminal charges brought by Landbridge Company are unfounded. Fundamentally, this case is a civil equity dispute between the two companies (or the actual controllers behind the companies), and it cannot be determined as a property infringement by the involved company against the other party.

In addition, even if Landbridge Company claims to have shareholder rights in the involved company or the involved project, it is still a corporate equity dispute between the two shareholders, and cannot be determined as an embezzlement or misappropriation of equity by the company's legal person against one of its shareholders. According to criminal law principles, the crime of duty embezzlement or misappropriation of funds violates the property rights and interests of the company itself, rather than the shareholder rights and interests under the name of the company. Shareholders' rights and interests are not equal to company property, and the two have different connotations, denotations, and statutory scopes.

Therefore, to sum up, this case does not involve any specific duty embezzlement of company assets by Han Tingyun. In fact, it is a civil equity dispute between two shareholders. It should not be handled as a criminal case, and the Public Security Bureau should carefully review the above legal relationship, assess the true cause of the case, and avoid intervening in the specific economic disputes.

II. Han Tingyun has always had a good record of conducts and no previous criminal history. Releasing her from detention or changing to a less severe form of detention would not affect the ongoing investigation and may be more conducive to the proper handling of the case.

According to Han Tingyun's father, Han Tingyun studied Spanish at the University of Havana in Cuba from September 2009 to July 2014. From August 2014 to May 2016, she worked at a tourism company in Beijing. In July and August 2016, she joined the International Business Department of Shanghai Gorgeous Investment Group Co., Ltd. and was sent to work in the International Business Department of Panama in March 2017 until now. It can be seen that Han Tingyun had been working for in companies since her graduating from university and worked abroad for a long time. Her working experience is extremely simple, and as of the occurrence of this case, Han Tingyun has never had any illegal records.



Han Tingyun was born in 1991 and is only 32 years old. As a young woman with limited social experience, she has been under enormous mental pressure due to her involvement in the civil disputes of the two companies, which has also affected her family. In addition, Han Tingyun has shown no negative behavior, and has been cooperating with the investigation since being taken into custody. Her explanations of her actions and knowledge have been based on facts, and her attitude has been proper. Therefore, it is no longer necessary to restrict Han Tingyun's personal freedom by monitoring her at a designated residence. The Public Security Bureau should consider immediately canceling the compulsory measures against Han

2

Tingyun based on the basic principles of properly resolving conflicts, protecting the rights and interests of the parties, and prudently applying criminal investigation powers.

III. Based on the charges, circumstances, and nature of this case, it is not appropriate to continue monitoring Han Tingyun at a designated residence as a compulsory measure, as it does not meet the requirements of the Criminal Procedure Law. The Public Security Bureau should consider immediately canceling the compulsory measures.

According to Article 75 of the *Criminal Procedure Law*, the compulsory measure can be applied in the following circumstances: (1) if the suspect or defendant has no fixed place of residence, it can be executed at a designated residence; (2) if it is executed at the residence may hinder the investigation of crimes related to endangering national security or terrorist activities, with the approval of the higher-level public security organ, it can also be executed at a designated residence. In this case, Han Tingyun's alleged crime of embezzlement does not meet the above application scenarios.

Therefore, according to Article 38 of the *Criminal Procedure Law*, the applicant requests in writing that the Public Security Bureau should cancel the compulsory measures of monitoring Han Tingyun at a designated residence, or change it to a bail pending trial.

Hereby we make the above application to Lanshan Branch of Rizhao Public Security

Bureau

Applicant:

Application Date:



3



# EXHIBIT "TH-6"
## (CHINESE)



# 解除、变更强制措施申请书

**申请人：** 刘晓丽律师　　浙江京衡（上海）律师事务所

地址：上海市闵行区园秀路 28 弄莘庄中心 3 号楼

电话：13869468125　　13122228125

**被申请机关：** 日照市公安局岚山分局

## 申请事由

申请公安机关对犯罪嫌疑人韩汀云变更强制措施为取保候审或直接解除指定居所监视居住措施。

## 事实与理由

浙江京衡（上海）律师事务所接受犯罪嫌疑人韩汀云父亲韩涛的委托，指派申请人担任犯罪嫌疑人韩汀云涉嫌职务侵占案的辩护律师，委托手续及律所公函均已提交。鉴于韩汀云目前被公安机关指定居所监视居住，申请人现根据法律规定，书面申请对犯罪嫌疑人韩汀云解除目前正在适用的强制措施，或者变更为取保候审措施。具体理由如下：

一、本案系经济纠纷引发，案件法律性质存在巨大争议，目前不好确定韩汀云涉嫌职务犯罪或者经济犯罪，不宜对其采取直接限制人身自由的强制措施

根据申请人了解，韩汀云所在涉案公司及实控人（以下均简称"涉案公司"）与本案控告人山东岚桥集团有限公司（以下简称"岚桥公司"）存在股权类民事纠纷，且现有民事纠纷结论有利于涉案公司，相关证据材料也能证明岚桥公司对涉案公司的股权为代持关系，实际

1

上岚桥公司并未出资，也不享有对涉案公司及涉案项目标的股东权益，因此也不可能享有任何实体意义上的财产权益，即岚桥公司根本不具有财产上的实质请求权，岚桥公司的刑事控告毫无理由。本案究其根本，本质上是两个公司（或者公司背后的实际控制人）之间的民事股权纠纷，不能确定为涉案公司对另一方的侵财性质。

此外，即便岚桥公司主张对涉案公司或者涉案项目具有股东权利，那么也是两个股东之间的公司股权纠纷，而不能认定为公司法人对其中一个股东股份权益的侵占或挪用性质。根据刑法原理，职务侵占罪或者挪用资金罪侵犯的是本公司的财产权益，而不是本公司名下的股东权益，股东权益不等于公司财产，二者内涵、外延、法定范围皆不同。

综上，本案韩汀云根本不涉及任何可能侵占公司资产的具体职务侵占行为，本案实则为两个股东之间的民事权益纠纷，不能作为刑事案件处理，请公安机关认真审核上述法律关系，评估案件发案的真正原因，避免介入具体的经济纠纷。

二、韩汀云本人一贯表现良好，无前科劣迹，对其解除强制措施或者变更轻缓型强制措施不至于影响继续侦查，可能会更加有利于案件的妥善处理

根据韩汀云父亲介绍，韩汀云 2009 年 9 月至 2014 年 7 月在古巴哈瓦那大学学习西班牙语，2014 年 8 月年至 2016 年 5 月在北京一家旅游公司工作，2016 年 7、8 月入职上海国之杰投资发展有限公司国际业务部，2017 年 3 月份被公司派遣到巴拿马国际业务部工作至今。由此可见，韩汀云自大学毕业后就在公司工作，且长时间在境外工作，工作经历极其简单，截止到本案案发，韩汀云从未有过任何违法记录。

2

　　韩汀云出生于1991年，年仅32岁，作为社会经验并不丰富的年轻女性，其因为两个公司的民事纠纷涉案，本人及家庭承担了巨大的精神压力。另外，韩汀云本人无不良表现，到案后也一直配合侦查机关的讯问，其对自己行为和所知事实提出的辩解意见，均有依据，态度端正。因此，继续以指定居所监视居住的方式限制韩汀云人身自由，已无必要，请公安机关本着妥善化解矛盾、维护当事人权益、审慎适用刑事侦查权的基本理念，考虑对韩汀云立即解除强制措施。

　　三、根据本案的涉案罪名、案情及性质、影响，不符合刑诉法规定的指定居所监视居住情形，建议公安机关立即变更

　　根据《刑事诉讼法》第75条规定，对于以下情形适用该种强制措施：（1）犯罪嫌疑人、被告人无固定住处的，可以在指定的居所执行。（2）对于涉嫌危害国家安全犯罪、恐怖活动犯罪，在住处执行可能有碍侦查的，经上一级公安机关批准，也可以在指定的居所执行。本案中，韩汀云所涉职务侵占均不符合上述适用情形。

　　综上，根据《刑事诉讼法》第38条规定，申请人书面申请公安机关解除对韩汀云的指定居所监视居住措施，或者变更为取保候审措施。

此致

日照市公安局岚山分局

申请人：

申请时间：





### SUPREME COURT OF BARBADOS
### IN THE HIGH COURT OF JUSTICE

CLAIM NO.     CV0083/ 2023

BETWEEN:

LANDBRIDGE PORT SERVICES (HONG KONG) LIMITED     **CLAIMANT**

AND

LANDBRIDGE HOLDINGS INC.                         **FIRST DEFENDANT**

TINGYUN HAN                                      **SECOND DEFENDANT**

SINOLAM CONSULTING & TRADING HOLDINGS PTE        **THIRD DEFENDANT**

LIANG ZHANG                                      **FOURTH DEFENDANT**

GORGEOUS COLON HOLDINGS CO. LIMITED              **FIFTH DEFENDANT**

---

### SECOND DEFENDANT'S AFFIDAVIT IN ANSWER

---

**ALRICK SCOTT, KC &**
**SHAMORA SCOTT-SPRINGER**
ATTORNEYS-AT-LAW

